**UNITED STATES of America, Appellee,**

v.

**Donna BECRAFT, Appellant.**

**No. 96–3098.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 24, 1997.

Decided July 8, 1997.

Rhearing and Suggestion for Rehearing
In Banc Denied Sept. 15, 1997.

Evelina J. Norwinski, Assistant Federal Public Defender, Washington, DC, argued the cause for the appellant. A.J. Kramer, Federal Public Defender, and Amy Seidman, Assistant Federal Public Defender were on brief.

Eileen F. Sheehan, Assistant United States Attorney, Washington, DC, argued

the cause for the appellee. Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas C. Black and Miriam M. Smolen, Assistant United States Attorneys, were on brief.

Before: GINSBURG, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

Dissenting opinion filed by Circuit Judge GINSBURG.

KAREN LeCRAFT HENDERSON, Circuit Judge:

On April 29, 1996 appellant Donna Becraft entered a guilty plea to one count of interstate transportation of stolen property in violation of 18 U.S.C. § 2314. The Information alleges that Becraft unlawfully transported from the District of Columbia to Maryland 11 checks totaling $37,854.25—the proceeds from one of four schemes Becraft employed to defraud her employer, the Institute of International Economics (Institute), of $108,-844.75 over a five-year period. On August 8, 1996 Becraft was sentenced to twenty-four months' imprisonment to be followed by three years of supervised release. She appeals her sentence insofar as it reflects an upward adjustment for abuse of a position of trust under section 3B1.3 of the United States Sentencing Guidelines (guidelines), primarily on the ground that she did not occupy a "position of trust" at the Institute within the meaning of section 3B1.3. We defer, as we must, to the district court's application of section 3B1.3 and affirm the abuse of trust adjustment.

The Congress has expressly directed that in reviewing sentences the court "shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous *and shall give due deference to the district court's application of the*

guidelines to the facts." 18 U.S.C. § 3742(e) (emphasis added); *see also United States v. Kim,* 23 F.3d 513, 517 (D.C.Cir.1994) ("Congress crafted a trichotomy: purely legal questions are reviewed de novo; factual findings are to be affirmed unless 'clearly erroneous'; and we are to give 'due deference' to the district court's application of the guidelines to facts."). We have described the statutory "due deference" standard as "presumably ... meant to fall somewhere between *de novo* and 'clearly erroneous,' a standard of review that reflects an apparent congressional desire to compromise between the need for uniformity in sentencing and the recognition that the district courts should be afforded some flexibility in applying the guidelines to the facts before them." *Id.* at 517. Under this standard we "should not ask whether we would decide the issue the same way but rather provide something akin to the review we give administrative agency determinations of such mixed questions." *Id.* (reviewing district court's determination that undisputed facts constituted "more than minimal planning" under guidelines § 2F1.1(b)(2)(A)).[1] We have already applied the due deference standard to the district court's determination that a particular set of facts constitutes abuse of a position of trust. *See United States v. Broumas,* 69 F.3d 1178, 1180 (D.C.Cir.1995), *cert denied,* —— U.S. ——, 116 U.S. 1447, 134 L.Ed.2d 566 (1996); *United States v. Barrett,* 111 F.3d 947, 954 (D.C.Cir.1997) (citing *Broumas*). We do so again here.

The record establishes that between 1990 and 1995 Becraft, who was hired as the Institute's office manager in 1985 and assumed the responsibilities of marketing director in 1994, employed various schemes to defraud her employer. Specifically, she prepared and submitted to the Institute (1) 11 false purchase orders in 1990 and 1991 for office supplies, for which the Institute issued $4,370 in checks that Becraft herself cashed; (2) 22 travel expense reports in 1993 and

---

1. The court explained: "A district judge's determination that a given set of facts constitute [sic] 'obstruction of justice' (as the guidelines use that term) or involve [sic] more than minimal planning, will typically not be exactly replicated in

any other case. And therefore there is less reason to insist on the uniformity that a question of law typically requires." 23 F.3d at 517 (citing *Pierce v. Underwood,* 487 U.S. 552, 562, 108 S.Ct. 2541, 2548, 101 L.Ed.2d 490 (1988)).

1994 for $57,320.50 worth of discount airline tickets that Becraft falsely claimed to have purchased with her own credit card for other employees' travel and for which the Institute reimbursed her; (3) 11 phony purchase orders in 1994 and 1995 for $37,854.25 worth of prepaid postage and stationery, for which the Institute issued checks that Becraft deposited in her own bank accounts; and (3) fictitious orders in 1994 and 1995 for $1.2 million worth of Institute publications, for which Becraft received $9,300 in performance raises and bonuses. Based on these facts, the district court stated:

> Well, I will first find that the defendant did occupy a position of trust and that she abused her position of trust in a manner that significantly facilitated the commission of the offense. I think that her position as Director of Marketing and Publication is the most clear to the Court, because in that position she was manipulating the publication sales figures so that she received performance bonuses and pay increases based on fictitious sales figures that she was manipulating. But, in addition, I think as an office manager, in the position she was in, that was itself a position of trust. And certainly the position she held facilitated the concealment of the offenses that she committed.

Sentencing Transcript at 16. Given the "due deference" standard discussed above, and the closeness of the question with which it was presented, we do not believe the district court committed reversible error in its application of the language of section 3B1.3 and its commentary to the facts here.

Guidelines § 3B1.3 provides: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." The guidelines commentary explains:

"Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.

U.S.S.G. § 3B1.3 application note 1. Thus, for example, the adjustment properly applies to "a bank executive's fraudulent loan scheme" but "would not apply in the case of an embezzlement or theft by an ordinary bank teller." *Id.*[2] Becraft contends the district court misapplied section 3B1.3 because she necessarily lacked the requisite "professional discretion" to occupy a position of trust. We disagree.

Although Becraft was under the nominal supervision of the Institute's deputy director, to whom she submitted her documentation for approval, she nevertheless exercised at least *de facto* final authority over her own ordering and marketing activities. The deputy director permitted Becraft to determine which purchases should be made and accepted her decision without question.[3] It was largely because of the complete trust he reposed in her, and the carte blanche he granted her, that Becraft was able to execute and conceal her various frauds over so long a time. In addition, after she became marketing director, Becraft apparently acquired extensive authority over sale of the Institute's publications, including control of the sales reports which she was able to manipulate to conceal her inflated book orders. All of this suggests that throughout the relevant period Becraft was, as the guidelines commentary contemplates, "subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature" and that her position can reasonably be described, in the commentary's words, as

---

2. The commentary further notes that the adjustment would apply to "an embezzlement of a client's funds by an attorney serving as a guardian" and to "the criminal sexual abuse of a patient by a physician under the guise of an examination." U.S.S.G. § 3B1.3 application note 1.

3. Apparently the deputy director did instruct Becraft in March 1994 to stop charging airline tickets on her own credit card, *see* Presentencing Report at 3, but she continued to submit expense reports and to receive payment therefor until September 1994.

"characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference)."

In arguing for reversal, Becraft relies heavily on this court's decision in *United States v. West*, 56 F.3d 216 (D.C.Cir.1995), which reversed an abuse of trust adjustment applied to a defendant who had worked as a courier for two different clients. For one client, West, while president and sole employee of his own courier company, was hired to transport checks from one bank to another, but instead converted them to his own use. For the other client, West, while employed by another courier company, was instructed to pick up items from lockboxes, from which he later stole credit card receipts that he used to process fraudulent credit transactions. There can be no question that West's employment as a courier was entirely ministerial with, as the court noted, "almost no discretion whatsoever." 56 F.3d at 221. He was simply charged with delivering items from one place to another.[4] In contrast, Becraft occupied a trusted supervisory position within the Institute entailing substantial spending and reporting authority (which she abused).[5]

For the preceding reasons, we defer to and uphold the district court's determination that Becraft occupied a position of trust within the contemplation of section 3B1.3.[6] The judgment of the district court is therefore

*Affirmed.*

GINSBURG, Circuit Judge, dissenting:

In *United States v. West* we rejected the very argument that the Government now advances and the court now accepts—that the two-level increase in a defendant's base offense level under § 3B1.3 of the Sentencing Guidelines should apply "merely because [the defendant] is entrusted with valuable things and has little or no supervision while performing his or her duties." 56 F.3d 216, 221 (1995). In *West* we explained that the adoption of such a theory "would stretch the abuse-of-trust enhancement to cover endless numbers of jobs involving absolutely no professional or managerial discretion, in clear contravention of the plain language of the commentary to section 3B1.3." *Id.* Indeed, the commentary to § 3B1.3 makes it clear that an upward adjustment for abuse of trust is inapplicable to any position that is not "characterized by professional or managerial discretion"—such as the positions of "an ordinary bank teller or hotel clerk"—because an employee in such a position is not "ordinarily ... subject to significantly less supervision than employees whose responsibilities are primarily nondiscretionary in nature." U.S.S.G. § 3B1.3, *comment.* (n.1). The commentary focuses upon positions that do involve substantial professional or managerial discretion; for example, the adjustment "would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination." *Id.*

By the court's present reasoning, however, any employee who is in fact trusted by his or her employer may receive an abuse-of-trust upward adjustment regardless whether the

---

**4.** The *West* panel rejected the government's argument "that West occupied a position of trust because his position as president of his own courier company conferred upon him substantial managerial discretion in the performance of his duties" toward either bank involved in the first job. 56 F.3d at 221. The panel concluded that "West's title of president" should "carry no special weight" because (1) "West was entrusted with checks in his capacity as a simple courier, not in his capacity as president" and (2) "the Government offered no proof that the original contract between appellant and the bank may have suggested the existence of any real discretionary component to West's job." *Id.*

**5.** It is also noteworthy that the *West* panel reviewed the district court's determination *de novo*

without according it the deference required under 18 U.S.C. § 3742(e). *See* 56 F.3d at 219 ("Whether West abused a position of trust within the meaning of section 3B1.3 is a question of law that we review *de novo*.") (citing *United States v. Smaw*, 993 F.2d 902, 905 (D.C.Cir.1993)).

**6.** We summarily reject Becraft's claim that she did not abuse her position "in a manner that significantly facilitated the commission or concealment of the offense," as required by section 3B1.3, given both the extensive paperwork she created to conceal all of her frauds and, perhaps more important, her manipulation of the sales records.

type of position occupied by the defendant would "ordinarily" be one of trust. Like a bank teller or hotel clerk, Becraft did not hold a position "that is ordinarily characterized by professional or managerial discretion." On the contrary only her supervisor, Tom Bayard, had authority to approve purchase orders and reimbursement requests and to sign checks. Yet, as the Court recounts, Bayard

> permitted Becraft to determine which purchases should be made and accepted her decision without question. It was largely because of the complete trust he reposed in her, and the carte blanche he granted her, that Becraft was able to execute and conceal her various frauds over so long a time.

*Ct. Op.* 5. This is correct; the record indicates that Becraft's frauds were easily detectable. Bayard received monthly reports from the office of IIE's Comptroller that would have enabled him to detect any discrepancies between sales and receivables. Bayard was negligent, however, in supervising Becraft, perhaps because he and Becraft enjoyed a close personal relationship. At Becraft's sentencing counsel for IIE reported that after conducting an internal investigation "we were left with the impression" that Bayard felt "let down by someone he had so trusted." Indeed, Bayard committed suicide a few days after Becraft's frauds were discovered.

Thus, the court errs in characterizing Becraft's position as "a trusted supervisory position within the Institute entailing substantial spending and reporting authority." *Ct. Op.* 6. To the contrary: Becraft supervised no one; it was only due to her own supervisor's complete failure to supervise her that she was able to take advantage of a position that would ordinarily have entailed little or no discretionary authority. His dereliction of duty does not somehow transform her position into one that is not "ordinarily" subject to significant supervision. *See United States v. Pardo,* 25 F.3d 1187, 1192 (3d Cir.1994) (enhancement not applicable to defendant able to commit bank fraud only because bank manager did not conduct routine background check on defendant); *United States v. Helton,* 953 F.2d 867, 869–70 (4th Cir.1992) (enhancement not applicable to cashier in charge of reimbursing employees for travel or purchase orders who was able to commit fraud only because of lax supervision); *cf. United States v. Ragland,* 72 F.3d 500, 503 (6th Cir.1996) (enhancement not applicable to bank customer service representative who "was not authorized to exercise any meaningful discretion").

We have previously cautioned that expanding the range of positions "characterized by professional or managerial discretion" may render the term "so boundless as to be meaningless." *United States v. Smaw,* 22 F.3d 330, 332 (1994) (reversing application of abuse-of-trust enhancement to time-and-attendance clerk). I fear that today's decision will have just that effect; henceforth, the operative question will no longer be whether the defendant occupied a position "characterized by professional or managerial discretion (i.e., ... [one] that is ordinarily given considerable deference)," but instead whether the defendant, regardless of the nature of his or her position, was closely supervised. Because that is not what the Sentencing Guidelines require, I respectfully dissent.