UNITED STATES of America, Appellee,

v.

Wilbert Jerome DREW, Appellant.

No. 98–3120.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 15, 1999.

Decided Jan. 25, 2000.

Howard B. Katzoff, appointed by the court, argued the cause for the appellant.

Florence Pan, Assistant United States Attorney, argued the cause for the appellee. Wilma A. Lewis, United States Attorney, and John R. Fisher, Assistant United States Attorney, were on brief for the appellee.

Before: EDWARDS, Chief Judge, SILBERMAN and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

Opinion filed by Chief Judge HARRY T. EDWARDS concurring in the judgment.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Wilbert J. Drew pleaded guilty to one count of possession of a firearm while subject to a court order in violation of 18 U.S.C. § 922(g)(8). For the first time on appeal Drew argues that section 922(g)(8) is unconstitutional under the Second and Fifth Amendments to the United States Constitution. Drew also argues that the district court made several sentencing errors: (1) in finding under the United States Sentencing Guidelines (U.S.S.G. or Guidelines) that Drew's relevant conduct included attempted first degree murder; (2) in applying the cross-reference provisions, sections 2K2.1 and 2X1.1, of the Guidelines; (3) in violating his right to due process by sentencing him based on attempted first degree murder supported by hearsay evidence; and (4) in applying the two-level enhancement for restraint of victim pursuant to U.S.S.G. § 3A1.3. We conclude that, because of his guilty plea, Drew waived his right to challenge the constitutionality of 18 U.S.C. § 922(g)(8). We further conclude that the district court properly applied the Guidelines' cross-reference provisions and that Drew's due process challenge to his conviction is meritless. Because we believe the district court improperly applied section 3A1.3's two-level enhancement for restraint of victim, however, we remand for resentencing without the enhancement.

## I.

On December 2, 1997 a grand jury returned a single-count indictment charging Drew with violation of 18 U.S.C. § 922(g)(8). Two days later the government filed a thirteen-count superseding indictment charging *inter alia* burglary, kidnapping and violation of a protective order. The charges arose from Drew's armed forced entry into his estranged wife's house and his subsequent actions. At the time of the offense Drew had been married to Renay Short–Drew for eleven years. He had physically abused her at least four times by "smacking, hitting, punching [and] kicking" her. PSR 4.[1] On October 14, 1997 Mrs. Drew petitioned the District of Columbia (District) Superior Court for a civil protection order (CPO) against Drew and obtained a temporary protection order pending a hearing. On October 27, 1997 the Superior Court issued a one-year CPO with standard conditions, using the form used by the Family Division of the Superior Court. The CPO required Drew to vacate the family premises and retrieve his belongings therefrom with a police escort, ordered Drew to stay at least 100 feet away from his wife and their three children, ordered Drew not to "assault, threaten, harass or physically abuse" his wife or the children in any manner and allowed Drew to contact her only through counsel. *Id.* Family counseling was also ordered

---

1. "PSR" refers to the amended presentence investigation report. "A" refers to the Public Appendix and Record Material. "R. Drew Tr." refers to the grand jury testimony of Renay Short–Drew. "Szala Tr." refers to the grand jury testimony of Paul Szala, a law enforcement officer with the District of Columbia Metropolitan Police Department (MPD).

and was scheduled to begin on November 19, 1997.

On November 2, 1997 Drew telephoned Mrs. Drew at about 2:30 a.m. Distraught, Drew said that he needed help right away and could not wait until the November 19th family counseling session. Drew told her that the system had failed him, everyone was turning their back on him and he was contemplating suicide. *See id.* Mrs. Drew suggested he contact their family doctor. *See id.* When she told him that she intended to hang up, he threatened to do something "drastic." *Id.* A few minutes later, Drew broke into their house by shattering a window. Mrs. Drew heard the sounds of breaking glass and someone running up the stairs. She locked her bedroom door, grabbed her portable phone and hid in a closet. She dialed 911 and requested help. While she was on the telephone with the emergency dispatcher, Drew broke through the bedroom door and then through the closet door. He pointed a shotgun in her face and said, "Bitch, get up. Get out of this closet." R. Drew Tr. 9. She pleaded with Drew, saying "Please, please don't shoot me. Don't kill me. Don't shoot me with the shotgun." *Id.* When she attempted to stall by saying that she had to put on her shoes, Drew declared, "You don't need shoes where you are going." A 117. At gunpoint, Drew forced his wife to walk out of the bedroom and into the upstairs hallway. There they met their 19–year-old son, Tamarkus, and their 15–year-old son, Jerral. Still pointing the gun at his wife, Drew said, "Bitch, walk." R. Drew Tr. 10. Drew went down the stairs in front of Mrs. Drew, continuing to point the shotgun at her, and told her again to come downstairs. *See* A 39. Eventually she walked down the stairs, stopping a few steps from the bottom. Their two sons also walked downstairs, trying to talk to Drew. Drew again complained that he was tired, the system had failed him and he couldn't take it anymore. He seemed "unfocused" and

his "eyes were glazed over." Mrs. Drew cried out again, "Please don't shoot me." A 118. At one point, Drew pointed the gun in his wife's face. *See* R. Drew Tr. 11. He also pulled the trigger of the gun. *See* Szala Tr. 7, 8. Mrs. Drew heard a "tick" or a "pop" but the gun did not discharge. *See* R. Drew Tr. 11.[2] When the gun did not discharge, Mrs. Drew and her sons jumped on Drew and attempted to take the gun away from him. MPD Officer Paul Szala arrived as they were struggling with Drew and with his assistance they subdued Drew and Szala placed Drew under arrest.

The government and defense counsel entered into plea negotiations. The government initially offered to allow Drew to plead guilty to two charges—Count One (possession of a firearm while subject to a court order in violation of 18 U.S.C. § 922(g)(8)) and an Information charging burglary while armed—noting that the Guidelines' base offense level for Count One would "probably be 24." Tr. 5/5/98 at 17. Drew rejected the offer. The government then offered to let him plead guilty to Count One only. Drew first declined and informed the trial court that he no longer wished to be represented by his counsel. After an on the record discussion involving the court, all counsel and Drew, Drew's counsel and Drew agreed to confer again. When the parties appeared in court again, one of Drew's lawyers, Assistant Federal Defender Gregory William Spencer, advised the court that, pursuant to a written plea agreement, Drew wanted to plead guilty to Count One. In exchange for Drew's guilty plea, the government dismissed all other charges against him. The plea agreement reserved the government's right of allocution at Drew's sentencing but provided that the government would not oppose a three-level reduction in Drew's offense level for acceptance of responsibility. Spencer also indicated:

firing pin, confirming that the trigger had been pulled. *See* Szala Tr. 7.

---

**2.** Forensic testing subsequently established that one of the shells had been struck by the

I believe that I was able to review for him the calculations that we believe would be appropriate in this case. I believe that I was able to discuss with him the calculations that we have tried to foresee that the government may argue, including various reasons for upward departures and various reasons for downward departures.

Tr. 6/2/98 at 28. Before accepting Drew's guilty plea, the district court referred to the proffer of facts and informed Drew that, by pleading guilty, he waived the right to appeal his conviction but retained the right to appeal an illegal sentence. Drew agreed with the factual proffer and stated that he understood he was waiving his right to appeal his conviction. *See* Tr. 6/2/98 at 42. The court then accepted Drew's guilty plea.

On September 28, 1998 the district court sentenced Drew to 80 months in prison followed by three years of supervised release. In sentencing Drew pursuant to the Guidelines' cross-reference provisions for firearm offenses, U.S.S.G. §§ 2K2.1 and 2X1.1, the court applied the base offense level for attempted first degree murder, added a two-level enhancement for restraint of victim under U.S.S.G. § 3A1.3 and allowed a three-level reduction based on acceptance of responsibility, resulting in a total offense level of 27 and a Guidelines range of 70–87 months.

## II.

■■■ The standard of review applicable to Drew's constitutional challenge to his conviction is discussed *infra*. We review the district court's application of the Guidelines as follows: "[P]urely legal questions are reviewed de novo; factual findings are to be affirmed unless 'clearly erroneous'; and [the Court] give[s] 'due deference' to the district court's application of the guidelines to facts." *United States v. Becraft*, 117 F.3d 1450, 1451 (D.C.Cir.1997) (quotation omitted).

### A. Waiver

■■■ Drew argues that his conviction should be vacated because the statute un-

der which he pleaded guilty, 18 U.S.C. § 922(g)(8), violates the Second and Fifth Amendments to the United States Constitution. The government responds that, by pleading guilty, Drew waived his constitutional challenge. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quotation omitted). The United States Supreme Court has recognized one exception to the general rule where the defendant's claimed right is "the right not to be haled into court at all upon the felony charges." *United States v. Broce*, 488 U.S. 563, 574–75, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (quoting *Blackledge v. Perry*, 417 U.S. 21, 30–31, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)); *see also Menna v. New York*, 423 U.S. 61, 62–63 n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) ("[A] plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute."). Drew contends that his constitutional challenge falls within the *Blackledge/Menna* exception. We disagree. In *United States v. Baucum*, 80 F.3d 539 (D.C.Cir.1996), we noted the error in labeling a challenge to the constitutionality of a statute a jurisdictional issue. In *Baucum* we did not apply the *Blackledge/Menna* exception because *Baucum* challenged a sentencing statute. But subsequent cases have made clear that Drew waived his constitutional challenge to 18 U.S.C. § 922(g)(8) because he failed to raise his challenge below. *See United States v. Badru*, 97 F.3d 1471, 1476 (D.C.Cir.1996) ("[B]ecause Ishmeal Badru's facial constitutional challenge to the 'school-yard statute,' ... is raised for the first time on appeal, it is barred by" *Baucum*, 80 F.3d 539.) (internal citation omitted); *see also United States v. David*, 96 F.3d 1477, 1482 (D.C.Cir.1996) ("We do not reach David's Commerce Clause challenge to his 18 U.S.C. § 922(g)(1) conviction because he failed to raise the claim in the lower court.").

## B. Attempted First Degree Murder

■ Drew argues that no evidence established that he pulled the shotgun trigger while pointing the gun at his wife. Because the district court's determination that Drew attempted to commit first degree murder is a factual finding, we review it for "clear error" and accord it "due deference." *See id.*[3] Mrs. Drew's grand jury testimony supports the finding that Drew attempted to murder her:

> [Prosecutor]: But what I do need to ask you, you told me that at one point your husband had the gun pointed at you, and you heard the trigger?
>
> [Mrs. Drew]: Yeah.

R. Drew Tr. 11. Furthermore, Officer Szala testified before the grand jury that Mrs. Drew told him that Drew had pointed the gun at her face and pulled the trigger. *See* Szala Tr. 7–8. At sentencing Drew did not contest that the gun was pointed at Mrs. Drew when he pulled the trigger. Also at sentencing the government introduced in evidence the shotgun recovered from the Drew residence the night of the offense as well as the indented shell. Based on this evidence, the sentencing court did not err, at least not clearly so, in finding that Drew "took sufficiently premeditated actions to constitute attempted first degree murder." *Drew,* 23 F.Supp.2d at 44.

## C. Cross–Reference Provisions

Under the Guidelines, the sentence for a violation of 18 U.S.C. § 922(g) is calculated by reference to section 2K2.1, entitled "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition." Section 2K2.1 is divided into three subsections: subsection (a) assigns the base offense level for firearms offenses; subsection (b) lists specific offense characteristics

to increase or decrease the base offense level; and subsection (c) is a cross-reference provision, which, as an alternative to subsections (a) and (b), assigns a potentially higher base offense level to a defendant who uses or possesses a firearm in connection with the commission or attempted commission of another crime. Section 2K2.1 provides in relevant part:

> (a) Base Offense Level (Apply the Greatest):
>
> . . . .
>
> (6) **14,** if the defendant . . . is a prohibited person;
>
> . . . .
>
> (b) Specific Offense Characteristics
>
> . . . .
>
> (4) If any firearm was stolen, or had an altered or obliterated serial number, increase by 2 levels.[4]
>
> (5) If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . , increase by 4 levels.
>
> . . . .
>
> (c) Cross Reference
>
> (1) If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense . . . , apply—
>
> > (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above.

Section 2X1.1 in turn provides:

> (a) Base Offense Level: The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.[5]

---

**3.** The district court noted that although sentencing facts must be proved by a preponderance of the evidence, the findings here had been proved "beyond a reasonable doubt." *United States v. Drew,* 23 F.Supp.2d 39, 43 n. 2 (D.D.C.1998).

**4.** The shotgun had an obliterated serial number.

**5.** Application Note 2 of section 2X1.1 defines "substantive offense" as "the offense that the defendant was convicted of . . . attempting . . . to commit."

. . . .

(c) Cross Reference

(1) When an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section.

Under section 2K2.1(c), the cross-reference provision, a defendant who uses a firearm to commit or attempt to commit another crime is assigned the offense level that corresponds "to that other offense, if the resulting offense level is greater than that determined" under subsections (a) and (b). Specifically, section 2K2.1(c) provides that the defendant's offense level should be determined under section 2X1.1. Section 2X1.1, in turn, provides that the base offense level for a crime involving attempt, solicitation or conspiracy should be calculated either by reference to the offense level of the substantive offense, *see* U.S.S.G. § 2X1.1(a), or "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section," *id.* § 2X1.1(c).

Drew argues that the district court erred in applying the cross-reference provisions of sections 2K2.1 and 2X1.1 to sentence him under the attempted murder guideline. *See Drew,* 23 F.Supp.2d at 43–44. Drew contends that he should have been sentenced under section 2K2.1(a) & (b)(5) and that the sentence imposed by the district court violated his right to due process.

*1. Application of sections 2K2.1 and 2X1.1*

■ The district court's interpretation of sections 2K2.1 and 2X1.1 involves a question of law that we review *de novo.*

*See Becraft,* 117 F.3d at 1451. We must first determine which subsection of 2K2.1 to apply. Drew argues that under subsections (a) and (b), his total offense level should be 17 and his sentencing range should be 30 to 37 months.[6] Subsection (c) of section 2K2.1, however, is the applicable provision because: (1) Drew "used or possessed [the] firearm or ammunition in connection with the commission or attempted commission of another offense" namely, attempted first degree murder, and (2) the resulting base offense level under subsection (c) would be greater than 17. Section 2K2.1(c) then refers the sentencing court to section 2X1.1.

Section 2X1.1(c) instructs the court to apply the guideline, if any, that "expressly cover[s]" an attempt to commit "another offense" as used in section 2K2.1(c). The government argues that, as the district court determined, Drew attempted to commit first degree murder because "he had the requisite state of mind, and took sufficiently premeditated actions to constitute attempted first degree murder." *Drew,* 23 F.Supp.2d at 44. As discussed *supra,* we conclude that the district court did not clearly err in determining that Drew's relevant conduct constituted attempted first degree murder. Referring to the guideline for "Assault With Intent to Commit Murder; Attempted Murder," U.S.S.G. § 2A2.1,[7] the court applied the base offense level (28) for attempted first degree murder. After the two-level increase for restraint of victim and the three-level reduction for acceptance of responsibility, Drew's total offense level is 27 and his sentencing range is 70 to 87 months. *See Drew,* 23 F.Supp.2d at 44.

**6.** The level 17 is calculated from the base offense level of 14 because Drew was a prohibited person, *see* U.S.S.G. § 2K2.1(a), to which is added a two-level adjustment for the gun's obliterated serial number, *see id.* § 2K2.1(b)(4), and a four-level adjustment for use of the weapon in connection with another felony offense. *See id.* § 2K2.1(b)(5). With a three-level credit for acceptance of responsibility, *see id.* §§ 3E1.1(a) and (b), Drew's of-

fense level would be 17. We agree with Drew that the district court erroneously added a two-level adjustment for physical restraint of the victim pursuant to section 3A1.3 of the Guidelines. *See infra* at 13–14.

**7.** U.S.S.G. § 2A2.1 provides:
(a) Base Offense Level:
(1) **28**, if the object of the offense would have constituted first degree murder.

■ Drew further argues, however, that even if section 2K2.1(c) is applicable, the sentencing court erred in interpreting section 2K2.1(c)'s cross reference to section 2X1.1 because section 2X1.1(a) uses the offense level for the "substantive offense." Application Note 2 of section 2X1.1 defines "substantive offense" as "the offense that the defendant was convicted of ... attempting ... to commit." Therefore, in Drew's view, the sentencing court should have applied the base offense level for the offense of conviction only—possession of a firearm by a prohibited person. Instead, the sentencing court, applying section 2X1.1(c), used the base offense level for attempted first degree murder. Drew's argument rests upon the applicability of "substantive offense." But "substantive offense" relates only to section 2X1.1(a) and (b); "substantive offense" is not mentioned in section 2X1.1(c). Application Note 2, which defines "substantive offense," "applies only if section 2X1.1 is applied directly, rather than as a cross-reference from section 2K2.1." *United States v. Branch,* 91 F.3d 699, 743 (5th Cir.1996) (quotation omitted); *see also United States v. Fleming,* 8 F.3d 1264, 1266 (8th Cir.1993). Therefore, section 2X1.1(c) requires the court to apply the offense level for attempted first degree murder prescribed in section 2A2.1.

### 2. Due process

■ Drew next argues that his sentence violates his right to due process because the district court "[i]n effect ... convicted appellant of attempted murder, and then sentenced him to the far greater offense," *see* Petitioner's Br. 26, and relied upon hearsay evidence in doing so. Drew concedes that he never raised his due process claim below but argues that his general challenge to the applicability of the cross-reference provisions preserved the issue. *See id. at* 25. Nevertheless, because the district court lacked the opportunity to rule on the issue, we review Drew's challenge for plain error only. *See United States v. Broxton,* 926 F.2d 1180, 1183 (D.C.Cir.1991). In the sentencing context, we have held that error is "plain" where it "is obvious under settled law and would result in grave prejudice or a miscarriage of justice if not corrected on appeal." *United States v. Watson,* 57 F.3d 1093, 1097 & n. 6 (D.C.Cir.1995) (citation omitted). Drew's challenge falls substantially short of this standard.

■ First, the United States Supreme Court has held that a sentencing court may consider a defendant's conduct apart from his offense conduct without violating due process. *See United States v. Watts,* 519 U.S. 148, 151–53, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *Witte v. United States,* 515 U.S. 389, 395, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (consideration of "relevant conduct" under Guidelines bears on character of offense of conviction and does not punish for different offense); *Nichols v. United States,* 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (reaffirming propriety of sentencing court's consideration of "a defendant's past criminal behavior, even if no conviction resulted from that behavior"); *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

■ Second, the district court indeed relied in part on Szala's hearsay testimony. His testimony corroborated Mrs. Drew's testimony regarding Drew's actions. The Supreme Court has specifically held that the rules of evidence do not restrict the evidence a sentencing court may consider. *See Nichols,* 511 U.S. at 747, 114 S.Ct. 1921 ("As a general proposition, a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come."). The sentencing court did not consider any prohibited evidence in sentencing Drew and, accordingly, we reject his due process claim.

### D. Physical restraint

Finally, Drew argues that the sentencing court improperly added a two-level adjustment under U.S.S.G. § 3A1.3 for "physically restrain[ing] [the victim]"[8] because he did not physically touch his wife and any restraint was part of the offense itself. The government responds that Drew physically restrained Mrs. Drew by ordering her to leave her bedroom and walk down the stairs at gunpoint. Whether the district court properly added the two-level adjustment is a mixed question of law and fact. On a mixed question of law and fact we use a sliding scale depending on the "mix" of the question. *See United States v. Kim,* 23 F.3d 513, 517 (D.C.Cir. 1994). Because the facts on this issue are not significantly in dispute, the issue is primarily a question of law and therefore review closer to *de novo* is required. *See id.*

Application Note 1 to section 3A1.3 defines "physically restrained," referencing commentary to section 1B1.1, as "the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1. We agree that "the use of the modifier 'such as' in the definition of 'physical restraint' found in § 1B1.1, Application Note 1(i), indicates that the illustrations of physical restraint are listed by way of example rather than limitation." *United States v. Anglin,* 169 F.3d 154, 163 (2d Cir.1999) (citation and internal quotation marks omitted). Nevertheless, the phrase "being tied, bound, or locked up" indicates that physical restraint requires the defendant either to restrain the victim through bodily contact or to confine the victim in some way. *See United States v. Harris,* 959 F.2d 246, 265 (D.C.Cir.1992) (victim was "physically restrained" when defendant's coconspirators beat victim and detained him for seven days). While the Ninth Circuit has decided that forcing someone to move by gunpoint constitutes physical restraint, *see United States v.*

*Thompson,* 109 F.3d 639, 641 (9th Cir. 1997), no other circuit has found physical restraint without some type of confinement accompanying the forced movement at gunpoint. *See Anglin,* 169 F.3d at 163–64. As the Second Circuit noted in *Anglin,* "The most pertinent definition of 'physical' is 'of the body as opposed to the mind, as, *physical* exercise.'" *Id.* at 164 (quoting *Webster's Deluxe Unabridged Dictionary* (1979) at 1353) (emphasis in original). The required restraint must, as the language plainly recites, be physical. While Mrs. Drew no doubt *felt* restrained by Drew, she was "not subject to physical restraint, as we interpret the Guideline's use of that phrase." *Id.* at 164–65. Any other interpretation would effectively add the two-level adjustment to almost any attempted murder because presumably any victim would feel restrained if directed to move at gunpoint. Because we conclude that Drew's actions did not include physical restraint, we remand to the district court to resentence without the two-level adjustment.

For the foregoing reasons, we affirm Drew's conviction. We vacate his sentence, however, because of the incorrect addition of a two-level adjustment for physical restraint of the victim and remand for resentencing in accordance with this opinion.

*So ordered.*

HARRY T. EDWARDS, Chief Judge, concurring in the judgment:

I concur in the judgment of the court. I write separately, however, because I feel that the court's disposition of the so-called *Blackledge/Menna* issue under the rubric of "waiver" warrants further explanation.

Appellant Drew has argued to the court that his conviction for violating 18 U.S.C. § 922(g)(8), pursuant to a plea of guilty, must be vacated because the statute, both on its face and as applied in this case,

---

8. U.S.S.G. § 3A1.3 states, "If a victim was physically restrained in the course of the offense, increase by 2 levels."

violates the Second and Fifth Amendments to the Constitution. The Government, citing *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), argues that Drew is barred from raising these constitutional challenges, because, normally, a guilty plea is not subject to later challenge before an appellate court. Drew, citing *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), responds that a defendant normally retains the right to challenge the constitutionality of a statute even following a guilty plea.

The majority opinion holds that Drew's attempt to invoke the *Blackledge/Menna* exception fails for two reasons: first, the constitutional issues now raised by Drew were "waived" when he failed to raise them first with the trial court; and, second, the constitutional questions need not be reached by this court, because they do not present a "jurisdictional" question. I fail to comprehend this line of analysis in light of my understanding of the *Blackledge/Menna* exception.

There are a number of potential theories of "waiver" and "forfeiture" in the criminal context. One is the well-known "plain-error" rule, most recently explained in full in *United States v. Olano,* 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). As the Court noted there, "[n]o procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Id.* (citations and internal quotation marks omitted). Absent "plain error," objections not timely raised at trial normally cannot be raised on appeal.

Another theory of forfeiture/waiver arises in the context of post-trial, collateral attacks. In such cases, absent a showing of "cause and prejudice," a defendant is barred from raising a constitutional challenge that could have been raised at trial.

*See, e.g., United States v. Frady,* 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

An entirely different line of inquiry arises with respect to challenges that follow a guilty plea. As noted above, the general rule in such cases is that a conviction pursuant to a guilty plea is not subject to later challenge before an appellate court. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The principal exception to this rule is the so-called *Blackledge/Menna* principle that "a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute." *Menna,* 423 U.S. at 62–63 n. 2, 96 S.Ct. 241. The *Blackledge/Menna* exception does not depend upon whether the objection is labeled "jurisdictional," at least the Supreme Court has never said this. Rather, the critical issue seems to be whether the constitutional challenge involves a claimed right by the defendant "not to be haled into court at all upon the felony charge." *Broce,* 488 U.S. at 575, 109 S.Ct. 757 (quoting *Blackledge,* 417 U.S. at 30–31, 94 S.Ct. 2098). In *Broce,* the Court made it clear that the *Blackledge/Menna* exception is not without limits, holding that a guilty plea barred a later double jeopardy claim where the violation was not clear on the face of the indictment. 488 U.S. at 576, 109 S.Ct. 757.

The question that we face is whether there should be an additional barrier to the invocation of the *Blackledge/Menna* exception, *i.e.,* whether a defendant must raise the constitutional objection before the trial court first in order to be able to raise it later before an appellate court. The Supreme Court has never addressed this issue.

Nor has this court ever addressed this issue. The majority's reliance on *United States v. Baucum,* 80 F.3d 539 (D.C.Cir. 1996), *United States v. Badru,* 97 F.3d 1471 (D.C.Cir.1996), and *United States v. David,* 96 F.3d 1477 (D.C.Cir.1996), is mis-

placed. *Baucum, Badru,* and *David* are simple "plain error" cases. Even though they talk in terms of "waiver" and "bar," they can mean nothing more than "forfeiture." As the Supreme Court said in *Olano,* "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citations and internal quotation marks omitted). If the majority means to suggest that, in a post-trial context, constitutional challenges raised on appeal that were not raised below are automatically *waived*—with no possible inquiry into plain error—that is simply wrong. The Supreme Court has made it clear that "[a] rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with . . . the rules of fundamental justice." *Id.* at 732, 113 S.Ct. 1770 (quoting *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037 (1941)). The *forfeiture* analysis as articulated in *Olano* is the law of the land, and our circuit has no authority to change it to some rigid standard of *waiver.*

In any case, *Baucum, Badru,* and *David* have nothing whatsoever to do with the application of the *Blackledge/Menna* exception. The court in *Baucum* discussed *Blackledge/Menna* because the defendant in that case raised the novel question of whether a facial challenge to the constitutionality of a criminal statute is a *jurisdictional* question that can be raised at any time. 80 F.3d at 540. The panel in *Baucum* recognized that the *Blackledge/Menna* line of authority lent some support to the defendant's claim. But *Baucum* does not purport to *apply* the *Blackledge/Menna* exception. In fact, *Blackledge/Menna* has no direct bearing on the issues in *Baucum*—it is discussed merely by way of analogy. So I fail to understand the major-

ity's reliance on these three cases in its resolution of the *Blackledge/Menna* issue.

The majority opinion appears to suggest that the mere failure to raise a constitutional challenge before the trial court automatically "waives" a defendant's right to pursue the issues in a subsequent attack under the *Blackledge/Menna* exception. The Supreme Court has never said this, and, so far as I can tell, none of our sister circuits subscribe to such a rule.

If a court faces a situation in which a defendant has pled guilty to a charge with respect to which it is facially clear that he *could not be prosecuted*—*i.e.,* as that is understood under the *Blackledge/Menna* principle—it would be an extraordinary proposition to say that the defendant will nonetheless go to jail because he failed to object before the trial court. The Fifth Circuit seemed to recognize this problem in *United States v. Knowles,* 29 F.3d 947 (5th Cir.1994). The defendant there pled guilty to possession of a firearm in a school zone. Shortly after judgment in *Knowles,* the court of appeals, in another case, ruled that the underlying statute upon which the charge in *Knowles* was based was unconstitutional, because Congress had not properly invoked its power under the Commerce Clause when it enacted the statute. The defendant in *Knowles* never raised this constitutional challenge before the trial court. The court of appeals, however, first employed the "plain error" rule to determine whether to entertain the challenge, then, finding no forfeiture, the court considered the claim on the merits pursuant to the *Blackledge/Menna* exception. The Fifth Circuit flatly rejected the Government's claim that the defendant's *guilty plea* barred consideration of the constitutional claim:

> Noting that a guilty plea generally waives defects in the underlying proceedings, the government also claims that Knowles's conviction on Count Two is proper because Knowles pleaded guilty. This argument is not persuasive. We have reversed other convictions against defendants who had pleaded

guilty to charges brought under the Gun Free School Zones Act. *See United States v. Handy*, 8 F.3d 20 (5th Cir. 1993) (unpublished). We have done so for the well-established reason that a guilty plea does not waive the right of the defendant to challenge the constitutionality of the statute under which he is convicted. *See Menna v. New York*, 423 U.S. 61, 62–63 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975) ("[A] plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute.").

*Id.* at 952.

In other words, the court in *Knowles* addressed the forfeiture issue through the normal "plain error" lens, and then applied the Supreme Court's *"judged on its face/ the charge is one which the State may not constitutionally prosecute"* test in allowing an invocation of the *Blackledge/Menna* exception. I think this is the correct approach. There are not many cases in which a defendant is going to be able to satisfy *both* the plain error rule and the *Blackledge/Menna* standard to gain review where no objection has been raised in the trial court. Nonetheless, the *Knowles* approach ensures protection for those few defendants whose alleged "guilt" is illusory, because it is clear on the face of the charge that the State had no constitutionally sound basis upon which to prosecute.

Drew argues that section 922(g)(8) violates the Second and the Fifth Amendments. These challenges raise no plain error. As the Supreme Court has noted, a challenge not raised below will not meet the plain error standard unless it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732, 113 S.Ct. 1770 (citations and internal quotation marks omitted). The issues raised by Drew do not come close to meeting the high standards of plain error. Indeed, as the Government noted in its brief, Drew's constitutional challenges are largely baseless. See Br. and Addendum for Appellee at 11 n.5.

I concur in the judgment in the instant case, not simply because Drew failed to raise his constitutional claims before the trial court, but because he has failed to demonstrate any plain error in the judgment based on his guilty plea. Absent plain error, I agree that Drew forfeited his right to raise his claims before this court. Because there is no plain error in this case, there is no reason to address whether Drew's claim on its face implicates the constitutional power of the Government to prosecute. In short, Drew cannot resort to the *Blackledge/Menna* exception to raise his constitutional claims.