**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 15 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

THOMAS J. O'FLANAGAN,

    Defendant-Appellant

No. 02-8014

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 01-CR-98-2-J)**

---

James H. Barrett, Assistant Federal Defender, Cheyenne, Wyoming, for the defendant-appellant.

David A. Kubichek, Assistant United States Attorney, Casper, Wyoming (Matthew H. Mead, United States Attorney, with him on the brief), for the plaintiff-appellee.

---

Before **KELLY**, **PORFILIO**, and **BRISCOE**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

    Defendant Thomas O'Flanagan appeals his sentence imposed following his pleas of guilty to burglary and aiding and abetting burglary, in violation of 18 U.S.C. §§ 13 and 2, transportation of a stolen firearm in interstate commerce and aiding and abetting

transportation of a stolen firearm in interstate commerce, in violation of 18 U.S.C.

§§ 922(i) and 2,[1] and interstate transportation of a stolen motor vehicle and aiding and

abetting interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C.

§§ 2312 and 2. He contends his sentence was illegally enhanced by the district court's

cross-reference from U.S.S.G. § 2K2.1(c)(1)(A) to U.S.S.G. § 2X1.1, which resulted in

the improper use of § 2B3.1(a) (robbery guideline) to calculate his concurrent sentences

of 120 months. O'Flanagan argues the district court should not have used the robbery

guideline to calculate a higher offense level because he had not been convicted of

robbery. We affirm.

## I.

On or about September 4, 2001, O'Flanagan and Patrick Engelbrecht burglarized

several homes in Wisconsin and took several items, including a Ruger Blackhawk .357

pistol and a Chevrolet Cavalier. They drove the Cavalier until it broke down in New

Brighton, Minnesota. The men approached the home of an elderly couple, Edmund and

Eleanor Stich, and asked to use their telephone. After a few unsuccessful calls, the men

declined Mr. Stich's offer of assistance and left the house. Ten minutes later, they

---

[1] Most (if not all) documents describe the charge in Count III as the unlawful transport in interstate commerce of a stolen firearm and ammunition having reasonable cause to believe that the firearm and ammunition were stolen, followed by citation to 18 U.S.C. § 922(h)(2)(i). The correct citation should be § 922(i), which makes it unlawful for "any person to transport or ship in interstate or foreign commerce, any stolen firearm or stolen ammunition, knowing or having reasonable cause to believe that the firearm or ammunition was stolen."

returned and again asked to use the phone. Mr. Stich invited the men into the house. As he turned toward the phone, Mr. Stich felt something in his back and heard one of the men say "keep moving." The men ordered the Stiches to lie down and then violently attacked them, rendering them both unconscious. The men took the Stiches' truck and drove it to Yellowstone National Park.

On September 7, 2001, a park ranger stopped the truck and, upon checking, learned that the truck was stolen and that the suspects were probably armed. The men attempted to flee by driving away in the truck. The ranger chased the truck into a parking area where the men escaped on foot. After a twelve-hour manhunt, the men were captured and arrested. Authorities found the stolen .357 pistol near the area where the men were captured. While evading capture, the men committed other criminal acts that are not relevant here.

## II.

O'Flanagan contends on appeal that the district court erred when it applied the cross-reference to U.S.S.G. § 2X1.1 found in U.S.S.G. § 2K2.1(c)(1)(A) to calculate his offense level pursuant to the robbery guideline found in U.S.S.G. § 2B3.1. The parties agree the district court properly began its analysis with § 2K2.1, which applies to firearm offenses where the defendant has been convicted of unlawfully receiving, possessing, or transporting firearms and/or ammunition. Section 2K2.1 is separated into three subsections: subsection (a) assigns the base offense level for the firearms offense;

3

subsection (b) lists specific offense characteristics that, if present, may increase or decrease the base offense level calculated under subsection (a); and subsection (c) is a "cross-reference" provision that provides an alternative to subsections (a) and (b) by assigning a potentially higher base offense level when the defendant uses or possesses a firearm in connection with the commission or attempted commission of another crime. See United States v. Drew, 200 F.3d 871, 877 (D.C. Cir. 2000). O'Flanagan argues the district court should have applied § 2K2.1(b)(5), which provides for an increase in offense level if the defendant "used or possessed any firearm . . . in connection with another felony offense," and that the court erred when it proceeded to the cross-reference provision of subsection (c).

Accepting the recommendation contained in the presentence report, the district court applied § 2K2.1(c), which provides:

> (c) Cross Reference
> (1) If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply –
> (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, *if the resulting offense level is greater than that determined above*; or
> (B) if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined above.

U.S.S.G. § 2K2.1(c) (emphasis added). Relying upon this section, the district court next

4

referred to § 2X1.1 which provides the base offense level is to be calculated "from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a). Concluding that the robbery of the Stiches' home constituted a "substantive offense," the court calculated O'Flanagan's base offense level from the robbery guideline. After taking into consideration all of the relevant circumstances under § 2B3.1 and various other factors, the district court sentenced O'Flanagan to a term of imprisonment of 120 months, the statutory maximum for a violation of 18 U.S.C. § 922(i).[2] See 18 U.S.C. § 924(a)(2).

O'Flanagan contends the district court erred in applying §§ 2K2.1 and 2X1.1 to calculate his base offense level under § 2B3.1(a). Specifically, he argues the robbery at the Stiches' house was not a "substantive offense," as defined in the commentary to § 2X1.1, because, at the time he was sentenced, he had not yet been convicted of that crime. We review O'Flanagan's legal challenge de novo. See Drew, 200 F.3d at 878 ("The district court's interpretation of sections 2K2.1 and 2X1.1 involves a question of law that we review de novo."); see also United States v. Spencer, 178 F.3d 1365, 1367 (10th Cir. 1999) (applying de novo review).

O'Flanagan concedes that his position is contrary to this circuit's precedent as well

---

[2] O'Flanagan does not, and cannot, assert a claim under Apprendi v. New Jersey, 530 U.S. 466 (2000), since his sentence does not exceed the statutory maximum. See Harris v. United States, 536 U.S. 545, 558, 565 (2002).

as precedent from other jurisdictions. In <u>United States v. Willis</u>, 925 F.2d 359 (10th Cir. 1991), we interpreted § 2X1.1 to permit the sentencing court's consideration of other offense conduct even though defendant was only convicted of being a felon in possession of a firearm and possessing an unregistered firearm. In <u>Willis</u>, the district court applied the pre-November 1, 1989, guidelines cross-reference provision of § 2K2.2(c)(1), and applied § 2X1.1 in sentencing the defendant under the aggravated assault provision because there was evidence he had used the firearm in a drive-by shooting. On appeal, defendant argued the court had misapplied the guidelines to enhance his sentence. We agreed with the defendant that the guidelines that became effective November 1, 1989, applied since the crime, indictment, and sentencing occurred after that date. However, we concluded both versions of the guidelines required cross-reference to § 2X1.1 and through that section the sentencing court was directed to § 2A2.2 (aggravated assault). Specifically, we held:

> Although the defendant was not convicted, and is not here being sentenced, for aggravated assault, § 2K2.1(c)(2) requires that he be sentenced for his firearm convictions by application of the sentence that would have been imposed for whatever underlying offense conduct he committed with the illegal firearm if that would lead to a greater sentence.

<u>Willis</u>, 925 F.2d at 360. Accordingly, we affirmed the district court's application of the aggravated assault guideline in light of uncontroverted evidence that the gun defendant

6

unlawfully possessed was used to commit the aggravated assault. See id. at 361.[3]

Our decision in Willis is consistent with rulings from other circuits. In Drew, defendant was convicted of possessing a firearm while subject to a court order. At sentencing, the district court relied on § 2K2.1(c) which cross-referenced § 2K1.1 and directed the court to the "base offense level for attempted first degree murder." 200 F.3d at 876. On appeal, defendant argued that § 2X1.1 and the definition of "substantive offense" in Application Note 2 required that the underlying conduct result in a conviction before the sentencing court could consider the conduct in computing the base offense level. The court expressly rejected this contention and concluded the definition of "substantive offense" does not apply when § 2X1.1 is cross-referenced by § 2K2.1 and that § 2X1.1 permits the sentencing court to consider underlying conduct for which the defendant has not been convicted. Id. at 879 (citing United States v. Branch, 91 F.3d 699, 743 (5th Cir. 1996), and United States v. Fleming, 8 F.3d 1264, 1266 (8th Cir. 1993)).

Prior to its ruling in Fleming, the Eighth Circuit had reached the same conclusion in United States v. Smith, 997 F.2d 396 (8th Cir. 1993) (per curiam), which was cited with approval in Drew, Branch, and Fleming. In Smith, defendant was convicted of being a felon in possession of a firearm. The district court took into consideration that

_____

[3] Although not raised in this appeal, in Willis, we also rejected the argument that the title of § 2X1.1 which references "Attempt, Solicitation or Conspiracy" renders § 2X1.1 inapplicable where the firearm at issue was actually used to commit an offense. Willis, 925 F.2d at 360.

7

defendant had shot and wounded a man with the firearm he was convicted of possessing and sentenced him under the applicable guideline for aggravated assault. On appeal, defendant argued the district court erred in using § 2X1.1 and the aggravated assault guideline because he had not been convicted of aggravated assault. The court began its analysis by stating that the guidelines generally permit a sentencing court to consider uncharged criminal conduct the government has proven by a preponderance of the evidence. The court rejected defendant's contention that § 2X1.1(a) required a conviction before a court could consider the underlying conduct, concluding that

> when read in context, [section 2X1.1(a)'s requirement of a conviction] applies only if section 2X1.1 is applied directly, rather than as a cross-reference from section 2K2.1. The cross-reference provision contains no language requiring that the defendant be convicted of the other offense. See U.S.S.G. § 2K2.1(c)(1)(A) (1991) ("If the defendant used or possessed any firearm . . . in connection with the commission or attempted commission of another offense . . . apply . . . § 2X1.1 . . . in respect to that other offense").

Smith, 997 F.2d at 397.

Acknowledging these authorities, O'Flanagan suggests his position is not contrary to our ruling in Willis. He contends Willis is distinguishable from Smith and the cases that rely upon it because the Sentencing Commission promulgated an intervening amendment to § 2X1.1. He further suggests that the post-Willis cases fail to take the effect of this amendment into consideration.

Prior to the 1991 amendment, § 2X1.1 provided that the base offense level was to be calculated "from the guideline for the *object offense*, plus any adjustments from such

guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a) (1990) (emphasis added). Effective November 1, 1991, section 2X1.1 was amended by replacing the word "object" with the word "substantive." See U.S.S.G. Guidelines Manual, App. C, Amendment 411 (1997). The change which O'Flanagan identifies as the most significant concerns § 2X1.1's Application Note 2. The amendment provided in relevant part:

> The Commentary to § 2X1.1 captioned "Application Notes" is amended in Note 2 by deleting:
> "Under § 2X1.1(a) the base level will be the same as that for the object offense which the defendant solicited, or conspired or attempted to commit.",
> and inserting in lieu thereof:
> "'Substantive offense,' as used in this guideline, means the offense that the defendant was convicted of soliciting, attempting, or conspiring to commit. Under § 2X1.1(a), the base offense level will be the same as that for the substantive offense."

U.S.S.G. Guidelines Manual, App. C, Amendment 411 (1997) (hereinafter "Amendment 411"). The express purpose of Amendment 411 was to "replace[] the term 'object offense' with the more commonly used term 'substantive offense,' and make[] clarifying and editorial changes." Id.

O'Flanagan has cited no case which would support a conclusion that these changes were anything more than cosmetic. He relies instead upon a dissent in United States v. Smith, 997 F.2d 396 (8th Cir. 1993), which rejected the majority's conclusion that § 2X1.1(a), when cross-referenced from § 2K2.1, does not require a conviction before the sentencing court can consider the underlying conduct. See id. at 399. In support of this

9

conclusion, the dissent principally relied upon the Sentencing Commission's deletion of background commentary that had followed the 1990 version of section 2K2.1. See id. This commentary stated:

> The firearm statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law. For example, a convicted felon may be prosecuted for possessing a firearm if he used the firearm to rob a gasoline station. Such prosecutions result in high sentences because of the true nature of the underlying conduct. The cross reference at § 2K2.1(c)(2) deals with such cases.

U.S.S.G. § 2K2.1, "Background" (1990). The dissent deduced from the deletion of this provision that the Sentencing Commission intended to narrow the scope of conduct that a sentencing court could permissibly consider. Accordingly, the dissent concluded defendant's sentence should be vacated because the district court based its sentencing computation in part upon conduct for which defendant had not been convicted. See Smith, 997 F.2d at 399.

We conclude that § 2X1.1, when cross-referenced by § 2K2.1(c), does not require a conviction before a district court may use the guideline provision applicable to the conduct underlying the firearm offense. Our conclusion is confirmed by an analysis of the express intent of the Sentencing Commission, the uniformity of persuasive authorities, the purpose of the Sentencing Guidelines, and the context in which § 2X1.1 is used.

We must interpret and apply the sentencing guidelines in a manner consistent with the Sentencing Commission's intent. See United States v. Holbert, 285 F.3d 1257, 1259

(10th Cir. 2002) (recognizing this court interprets the sentencing guidelines to ascertain legislative intent). A fundamental rule of statutory construction is that we presume Congress, when reenacting a statute without change, adopts uniform judicial interpretations given a particular word, phrase, or provision. See Bragdon v. Abbott, 524 U.S. 624, 645 (1998) (finding uniform judicial and administrative construction of statutory definition and intent to incorporate construction by repeating same language); Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 211 (1988) (presuming Congress has knowledge of judicial interpretations given old bankruptcy law when enacting new version). We believe this maxim applies with equal force to promulgations from the Sentencing Commission. See Holbert, 285 F.3d at 1259 ("We interpret the Sentencing Guidelines as though they were a statute or court rule, with ordinary rules of statutory construction."). Although O'Flanagan suggests § 2X1.1 was substantially changed by Amendment 411, the minor changes and the Sentencing Commission's failure to indicate it was overruling our prior interpretation of the affected guidelines suggest that the Sentencing Commission was content with the prior interpretation of § 2X1.1. Cf. General Radio Co. v. Superior Elec. Co., 293 F.2d 949, 351 (1st Cir. 1961) (noting Supreme Court determined *stare decisis* was required when interpreting venue statute even though statute had been amended because its wording, while different, did not change substance of statute). Omission of explicit language to the contrary stands in stark contrast to other amendments where the Sentencing Commission has made its intentions clearly known.

11

See, e.g., U.S.S.G. Guidelines Manual, App. C, Amendment 484 (1997) ("This amendment addresses an inter-circuit conflict . . . by expressly providing"). Moreover, the Sentencing Commission has not expressed displeasure with the uniform judicial interpretation and application of § 2X1.1 in the years following the amendment.

We also find instructive the fact that, in those decisions where the precise issue before us has been addressed, the *unanimous* conclusion has been a rejection of O'Flanagan's contention that § 2X1.1(a), when cross-referenced from § 2K2.1(c)(1), requires a "conviction" for the underlying criminal conduct before the sentencing court may use the guideline applicable to that conduct. See Drew, 200 F.3d at 879; Branch, 91 F.3d at 743; Smith, 997 F.2d at 397.

As further support for our conclusion, we note the Supreme Court has often recognized that the Sentencing Guidelines do not divest sentencing courts of their traditional discretion to consider all aspects of the criminal act at issue and to sentence a defendant accordingly. See, e.g., United States v. Watts, 519 U.S. 148, 152 (1997). This is true if the other activities were not charged in a federal indictment, were charged in the indictment but eventually dismissed, resulted in acquittal, or if the conduct violated state criminal laws. See id. (holding a sentencing court may consider conduct that resulted in an acquittal); United States v. Flennory, 145 F.3d 1264, 1266-67 (11th Cir. 1998) (considering conduct charged in the indictment but dismissed as part of the plea agreement); United States v. Dawn, 129 F.3d 878, 884 (7th Cir. 1997)(recognizing

12

sentencing court can look to events "regardless of whether the defendant was ever charged with or convicted of that conduct, and regardless of whether he could be"); Willis, 925 F.2d at 361 (rejecting argument that consideration of state law crimes for federal sentencing purposes is impermissible).

AFFIRMED.