**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 29, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TOBIN LEE MCGUFFIN,

Defendant-Appellant.

No. 04-8059

(D. Wyoming)

(03-CR-113-D)

**ORDER AND JUDGMENT**   *

Before **HENRY, McKAY**, and **HARTZ**, Circuit Judges.

After a heated brawl with his girlfriend, Tobin Lee McGuffin was charged in Teton County, Wyoming district court with aggravated assault, kidnaping, battery, and property destruction. He pleaded guilty to the aggravated assault charge in exchange for the state's dismissal of the other counts. He was sentenced to three to ten years' imprisonment and received a $1,010 fine.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

As a result of the foregoing events, Mr. McGuffin was subsequently indicted in federal district court with being a fugitive in possession of firearms, (count 1) and ammunition (count 2), both in violation of 28 U.S.C. §§ 922(g)(2). Mr. McGuffin pleaded guilty to each count, and he was sentenced to 44 months of imprisonment on each count (to be served concurrently), three years of supervised release, and a $500 fine.

Mr. McGuffin challenges the testimony presented at his sentencing hearing, alleging violations of the Confrontation Clause. Mr. McGuffin also brings a *Blakey/Booker* challenge to his sentence, contending the district court plainly violated his Sixth Amendment rights when it found, by a preponderance of the evidence, that the facts supported a cross-reference to the underlying crime of kidnaping. Mr. McGuffin argues he was improperly sentenced because the sentencing range for his indicted offense was 12-18 months and he was sentenced to 44 months based on the cross-reference. For the reasons stated below, we affirm Mr. McGuffin's conviction and sentence.

## I. BACKGROUND

Several facts regarding the underlying altercation remain in dispute. Ms. Cynthia Anderson had been living with Mr. McGuffin, whom she knew as Cody Grey, for approximately a year, when she became concerned with his increasingly violent and abusive temper. On October 26, 2002, she apparently hid Mr.

McGuffin's pain medication because she believed the medication exacerbated his outbreaks. Mr. McGuffin, annoyed about a wiring malfunction in his truck, announced he was leaving in Ms. Anderson's truck when she refused to give him the medication. She told him she did not want him to drive her truck and his anger increased. She apparently muttered "No wonder his wife killed herself," not realizing Mr. McGuffin overheard her. Aple's Br. ex. 1, at 2 (No. 02105-2273, Victim Impact Statement). At this point, Mr. McGuffin was incensed.

Mr. McGuffin exclaimed "I'll show you, you mother-f---er. I'll kill you," and retrieved his rifle and revolver from his truck. Aple's Br. ex 2, at 2 (Jackson County Sheriff's Office Rep't). Ms. Anderson retreated inside and called the police. She locked the door, which Mr. McGuffin proceeded to kick in.

Once inside, Mr. McGuffin pointed the revolver at Ms. Anderson and stated "you're going to die today" and pulled the trigger several times. *Id.* Ms. Anderson believed the gun to be loaded. Mr. McGuffin pointed the gun at his head, and stated "I'm going to kill myself– I have nothing to live for" and pulled the trigger several times. *Id.*

Ms. Anderson tried to escape, but Mr. McGuffin grabbed her and locked the door. He told her that they were going to play Russian Roulette and that he had loaded two rounds into the revolver. While pushing the weapon into her head he stated his intent to kill Ms. Anderson and then himself, and he proceeded to

pull the trigger several times.  This behavior apparently preceded a second call to 911.  He then pointed the revolver at himself and pulled the trigger several times.  Ms. Anderson ran into the kitchen, was knocked down by Mr. McGuffin, and ran back into the living room.  At about this point, deputies entered the house after hearing screams and the clicking sound of the revolver.  The revolver was found in a kitchen drawer, and six .44 magnum cartridges were found in Mr. McGuffin's trouser pockets.  Deputies found a Browning .338 caliber rifle with two rounds in the magazine on the front porch.

According to Mr. McGuffin's version of events, he was angered by a statement from Ms. Anderson about his late wife's having killed herself because of him.  Mr. McGuffin stated his wife and son were killed by a drunk driver.  He admitted retrieving the guns, because Ms. Anderson had approached his truck and began to throw other items out of it.  Concerned the guns might go off, he grabbed them, and Ms. Anderson went into the house and locked the door.

Mr. McGuffin kicked in the door and emptied the revolver of its bullets, all the time in plain view of Ms. Anderson.  Although he did not recall pointing the revolver at her, he did remember pulling the trigger numerous times to show that it was unloaded.  Mr. McGuffin denies shoving, pushing, or grabbing Ms. Anderson, but he admitted he "gently" pushed her into a chair so they could talk things out.  *Id.* at 3.  He recalls Ms. Anderson threw a telephone at him, which he

then threw to the floor. He also claims that he called 911 the second time. Mr. McGuffin admitted he placed the revolver in the kitchen drawer for safekeeping.

Mr. McGuffin was charged with aggravated assault, kidnaping, battery, and property destruction in Teton County District Court. He pleaded guilty to aggravated assault and was sentenced to three to ten years.

In federal court, Mr. McGuffin was subsequently indicted for violations of (1) 18 U.S.C. §§ 922(g)(2) and 924(a)(2), as a fugitive in possession of a firearm, and (2) 18 U.S.C. §§ 922(g)(2) and 924(a)(2), as a fugitive in possession of ammunition. Mr. McGuffin pleaded guilty to both counts.

The Probation Officer prepared a presentence report ("PSR") reflecting that United States Sentencing Guidelines Manual § 2K2.1(c) indicates that if a defendant uses or possesses any firearm or ammunition in connection with the commission or attempted commission of another offense, it is appropriate to apply § 2X1.1 with respect to the other offense, if the resulting offense level is greater than that provided by § 2K2.1, which provided an offense level of 12.

The Probation Officer determined the proper cross-reference for the underlying violations to be § 2A4.1 of the Guidelines, which provides a sentencing range for the underlying offense conduct of kidnaping. Mr. McGuffin objected to the cross-reference.

Under Wyoming law:

(a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he *unlawfully confines another person, with the intent to:*

(i) Hold for ransom or reward, or as a shield or hostage;

(ii) Facilitate the commission of a felony; or

(iii) Inflict bodily injury on or to terrorize the victim or another.

(b) A removal or *confinement* is unlawful if it is accomplished:

(i) By *Force, threat, or deception . . .*

Rec. vol. IV, Addendum to PSR (quoting WYO. STAT. § 6-2-201) (emphasis added by probation officer). The probation officer noted that a conviction regarding the underlying conduct is not necessary for a district court to use the guideline provision under § 2X1.1. According to the PSR, Mr. McGuffin's offense conduct met the elements of kidnaping under Wyoming law. Adopting this recommendation, Mr. McGuffin's offense level would be 24.

In his sentencing memorandum, Mr. McGuffin requested a sentence with a cross-reference to § 2A2.2 (aggravated assault). In contrast to kidnaping, a person is guilty of aggravated assault if he or she:

(i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;

(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another; . . . .

WY. STAT. § 6-2-502. If the court had applied § 2A2.2, Mr. McGuffin's total offense level would have been 15, with a criminal history category of II, placing him in a sentencing range of 21-27 months.

At the sentencing hearing, Special Agent Jay Johnson testified over objection that he had spoken with Ms. Anderson and that the victim impact statement from the state conviction came from her. The victim impact statement was introduced as evidence, over Mr. McGuffin's objection. Agent Johnson testified that his conversation with Ms. Anderson was consistent with the statement.

Mr. McGuffin's counsel challenged the agent's testimony, contending it was hearsay and a violation of the Confrontation Clause. The district court rejected this challenge, stating that if Mr. McGuffin "wanted a trial and wanted due process of law, he could have taken his case to a jury [where] [h]e could have confronted all the witnesses against him." Rec. vol. III, at 18.

Mr. McGuffin's counsel informed the court he would like Mr. McGuffin to present his version of events in a forum where he would not be under oath and not

subject to cross-examination.  Counsel emphasized that Ms. Anderson's victim impact statement was similarly unsworn and was not subject to cross-examination. The court allowed Mr. McGuffin ten minutes to provide his version of events from the podium, without being sworn in and thus without being cross-examined.

Mr. McGuffin then reiterated his version of events, stressing that Ms. Anderson knew the gun was unloaded, that he left no marks on her, and that he was trying to "get [his] stuff and get away from there" and that he did "scare her" during the process.  *Id.* at 36.

The district court noted that the Federal Rules of Evidence do not apply during a sentencing hearing.  In its adoption of the PSR's recommendations, the court observed that the government's evidence was "compelling" and that Agent Johnson's testimony "corrobor[ated] the matters contained in the report."  *Id.* at 47-48.

The district court adopted the PSR, and sentenced Mr. McGuffin using § 2A4.1, which carried an offense level of 24.  The court added two levels for the use of a dangerous weapon, USSG § 2A4.1(b)(3), and subtracted three levels for Mr. McGuffin's acceptance of responsibility under § 3E1.1(a) and (b).  His resulting offense level was thus 23, with a criminal history category of II.  The applicable sentencing guideline imprisonment range was 51-63 months.  The court sentenced Mr. McGuffin to 63 months, and gave him credit for the nineteen

months he had served on the state court conviction, resulting in a total sentence of 44 months.

## II. DISCUSSION

### A. Confrontation Clause

Mr. McGuffin challenges the testimony presented in support of the prosecution at the sentencing hearing. He is primarily concerned about the testimony from an officer relaying Ms. Anderson's account of the assault, which was encapsulated in the Victim Impact Statement from the state court proceedings. In denying Mr. McGuffin's objections, the district court noted that hearsay and Confrontation Clause objections were inappropriate during sentencing proceedings. In addition, the court found the evidence of the underlying crimes (assault and kidnaping) to be credible, and thus, pursuant to § 2K2.1(c)(1)'s cross-reference to the kidnaping guidelines, sentenced Mr. McGuffin under § 2A4.1 (Kidnaping, Abduction, Unlawful Restraint).

When a defendant contends that a district court ruling violated his rights under the Confrontation Clause, we review de novo whether an error occurred and, if so, whether the error was harmless beyond a reasonable doubt. *United States v. Joe*, 8 F.3d 1488, 1497 (10th Cir. 1993) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Clearly, this "constitutional safeguard" is "directed at ensuring the fairness of criminal proceedings by defining the situations in which confrontation by cross-examination must be afforded a defendant." *United States v. Fatico,* 579 F.2d 707, 714 (2d Cir. 1978).

Mr. McGuffin argues that in the wake of *Crawford v. Washington*, 541 U.S. 36 (2004), his rights under the Confrontation Clause are revived at sentencing. Our pre-*Crawford* caselaw holds that the Confrontation Clause does not apply at non-capital sentencing proceedings under the Sentencing Guidelines. *See United States v. Beaulieu*, 893 F.2d 1177, 1180 (10th Cir. 1990) ("[T]he Guidelines were not intended to place new restrictions on the sources of information available to the sentencing judge.") (emphasis omitted). In fact, the Guidelines allow a sentencing court to consider all relevant information "without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3(a); see 18 U.S.C. § 3661; *see also United States v. Higgs,* 353 F.3d 281, 324 (4th Cir. 2003) (noting that "it even now remains unclear whether the Confrontation Clause applies" to capital sentencing proceedings).

In *Crawford*, the State offered a taped police interview of a woman whose husband was on trial for stabbing a man whom the husband claimed tried to rape his wife. *Crawford*, 541 U.S. at 38. The trial court allowed the tape into evidence, finding that the wife's inculpating testimony met the requirement that the statements bear an "adequate 'indicia of reliability'" under *Ohio v. Roberts*, 448 U.S. 56 (1980), because they bore a particularized guarantee of trustworthiness. *Id.* at 38, 40, 41.

Prior to *Crawford*, a district court could admit hearsay evidence against a criminal defendant whenever the declarant was "unavailable" and the evidence had "adequate 'indicia of reliability,'" because it fell within a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66. *Crawford*, however, symbolized a "fundamental shift" in the Court's Confrontation Clause jurisprudence. *United States v. Solomon*, 399 F.3d 1231, 1237 n.2 (10th Cir. 2005) (citing *Crawford,* 541 U.S. at 51). The Court held that the Confrontation Clause prohibits testimonial out-of-court statements unless the declarant is shown to be unavailable and the defendant had an earlier opportunity to cross-examine the declarant. 541 U.S. at 51-52. Testimonial hearsay includes "custodial examinations" and "[s]tatements taken by police officers in the course of interrogations." *Id.* at 52, 63 (noting that the *Roberts* approach to testimonial evidence demonstrated an "unpardonable . . .

capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude").

Although it is clear that the analytical approach announced in C*rawford* is a departure from *Roberts* and its progeny, and that *Crawford* overruled *Roberts*'s standards for analyzing a Confrontation Clause claim when testimonial evidence is involved, there is no indication that the Supreme Court was focusing on the application of the Clause at sentencing. Here, Agent Johnson testified at sentencing that Ms. Anderson's victim impact statement from the state court proceeding was consistent with his interview of her. The agent had reviewed the police reports from the assault and had spoken to Ms. Anderson. Ms. Anderson's statements were never cross-examined because Mr. McGuffin pleaded guilty to the state charge. As a partial solace, Mr. McGuffin presented his story from the podium, during which time he was not under oath or cross-examined. We therefore reject Mr. McGuffin's argument that there was any violation of his Confrontation Clause rights.

B. *Booker* error

Under the Supreme Court's holding in *United States v. Booker*, 125 S. Ct. 738 (2005), if a judge finds facts by a preponderance of the evidence that increase the defendant's authorized sentence, a defendant may be entitled to remand. In

-12-

*United States v. Gonzalez-Huerta*, 403 F.3d 727 (10th Cir. 2005) (en banc), we explained the two types of error under *Booker*: constitutional and non-constitutional. Mr. McGuffin argues that (1) the error here was structural, and (2) the constitutional error here was plain. At oral argument, counsel acknowledge that we have since rejected his structural error claim. *See id.* at 734. In its briefing, the government insisted that any error was non-constitutional but conceded at oral argument that the judge found facts that increased Mr. McGuffin's sentence beyond the maximum authorized by his guilty plea. This amounted to constitutional error under *Booker.*

Although Mr. McGuffin vigorously contested the facts underlying the district court's cross-reference to kidnaping, he raised this issue only in the context of a Confrontation Clause argument. At oral argument, Mr. McGuffin's counsel admitted he neither couched his argument as a Sixth Amendment challenge, nor as an *Apprendi* or *Blakely* claim. As such, we review his *Booker* claim for plain error. *See Booker*, 125 S. Ct. at 769 ("[W]e expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test.").

### 1. Plain error

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or

public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732

(further quotation omitted); *United States v. Olano*, 507 U.S. 725, 732 (1993).

"We conduct this analysis 'less rigidly when reviewing a potential constitutional

error.'" *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005) (quoting

*United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001)).

> 2. The error did not affect Mr. McGuffin's substantial rights or seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

The government concedes that the first two prongs of the *Olano* test as to

*Booker* error are satisfied here. To satisfy *Olano*'s third prong, that the error

affected his substantial rights, "a defendant must show a 'reasonable probability'

that the defects in his sentencing altered the result of the proceedings." *Dazey*,

403 F.3d at 1175 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74,

(2004)). We have held in the context of reviewing a constitutional Booker error

that a defendant may meet this burden in at least two ways:

> First, if the defendant *shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence*, then the defendant successfully demonstrates that the error below affected his substantial rights. . . . Second, a defendant may show that the district court's error affected his substantial rights by demonstrating a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a), the district court judge would reasonably impose a sentence outside the Guidelines range.

-14-

*Id.* (emphasis added and footnote omitted). Mr. McGuffin contends that, given the factual dispute over the cross-referenced guideline, we should remand because the district court may well exercise its discretion to sentence him more leniently.

The Wyoming statute defines kidnaping to include "unlawful[] confine[ment] . . . with the intent to . . . [h]old for ransom or reward, or as a shield or hostage;" or to "[i]nflict bodily injury on or to terrorize the victim or another," with the use of "[f]orce, threat, or deception." WYO. STAT. § 6-2-201. As the facts here do not justify a finding of unlawful confinement with the intent to hold for ransom or reward or as a shield or hostage, the district court must have concluded, based upon Ms. Anderson's version of the facts, that Mr. McGuffin intended to "[i]nflict bodily injury on or to terrorize" her. *Id.*

Although we recognize that the facts underlying the cross-reference are contested, and we could conclude that a jury might not have found the same material facts applying the reasonable doubt standard that the district court judge found by a preponderance of the evidence, we need not reach this issue here.

The record suggests that the sentence Mr. McGuffin might receive were we to remand might be harsher than the forty-four months he actually received. At sentencing, the district court observed

> "[T]he sentence that will be imposed on you by the Court will take into account what I believe to be a pretty horrific set of circumstances. . . . But for the grace of God your victim didn't die; and, frankly, but for the

grace of God you're not on death row[,] which could have happened here.

I think the facts here are chilling and reflect a degree of lawlessness that requires the Court to take that into account . . . .

Rec. vol. III, at 55.

Even if we were to assume Mr. McGuffin carries his burden of establishing the first three prongs of the plain error test, we may exercise our discretion to correct the error only if it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 469-70 (1997) (quoting *Olano*, 507 U.S. at 736). We have recently outlined five factors to consider in making this decision:

(a) a sentence increased substantially based on a *Booker* error,

(b) a showing that the district court would likely impose a significantly lighter sentence on remand,

(c) a substantial lack of evidence to support the entire sentence the Guidelines required the district court to impose,

(d) a showing that objective consideration of the § 3553(a) factors warrants a departure from the sentence suggested by the Guidelines, and

(e) other evidence peculiar to the defendant that demonstrates a complete breakdown in the sentencing process.

*United States v. Dowlin,* 2005 W 1155882, *18 -19 (10th Cir. May 17, 2005). We decline to exercise our discretion here.

As to the increased sentence, we acknowledge that the difference between the sentencing ranges is significant: had the district court cross-referenced to aggravated assault Mr. McGuffin would have received at most 27 months, nearly three years less than he received.

Mr. McGuffin's argument falters on the remaining factors, however. After the district court determined Mr. McGuffin's applicable Guidelines range was 51 to 63 months of imprisonment, it chose to sentence Mr. McGuffin to a 63-month term (reduced for time served on the state charges). "In other words, the court exercised its discretion and in doing so sentenced [Mr. McGuffin] to serve the maximum term of imprisonment it could lawfully impose." *United States v. Mozee*, No. 04-8015, 2005 WL 958498, at *9 (10th Cir. Apr. 27, 2005).

> As a result, any argument that the court might have sentenced [him] to [fewer] months . . . had it understood it had discretion to do so is simply unpersuasive. Because the court decided to maximize punishment rather than exercise leniency where it had discretion, there is no basis for us to assume Mr. [McGuffin] would receive a lesser sentence if he were resentenced under a discretionary sentencing regime in which the district court is required to "consider" the guidelines when it exercises its discretion. *See Booker*, 125 S. Ct. at 764.

*Id.*

Although Mr. McGuffin disputes the evidence underlying the cross-reference to kidnaping, we are not convinced there is a substantial lack of evidence to support the district court. Similarly, our review of the § 3553(a) factors and our review of the record do not suggest that the integrity of the sentencing process was undermined. Finally, Mr. McGuffin points to nothing in the record to indicate that this case represents a breakdown of the sentencing process.

Given the district court's observations about the horrific nature of the crime, and its decision to sentence at the top of the range, Mr. McGuffin has not persuaded us that the Sixth Amendment error here seriously affects the fairness, integrity, or public reputation of judicial proceedings. We therefore decline to exercise our discretion to correct the forfeited error.

### III. CONCLUSION

Mr. McGuffin is unable to establish that the Supreme Court in *Crawford* intended to provided full Confrontation Clause rights at sentencing. He is also unable to convince us that our failure to recognize plain error in this case would seriously affect the fairness, integrity, or public reputation of judicial

proceedings.  Accordingly, we AFFIRM Mr. McGuffin's conviction and sentence.


Entered for the Court


Robert H. Henry
Circuit Judge