**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JUSTIN J. SADLER,

Defendant-Appellant.

No. 14-8005
(D.C. No. 2:13-CR-00099-NDF-1)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **HOLMES**, and **PHILLIPS**, Circuit Judges.

---

After he was convicted of being a felon in possession of a firearm in

violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Defendant-Appellant Justin

Sadler was sentenced to a term of 120 months' imprisonment. He contends that

his sentencing range—determined pursuant to the United States Sentencing

Guidelines ("U.S.S.G." or "Guidelines")—is both procedurally and substantively

---

[*]       Having examined the briefs and appellate record, this panel has
decided unanimously to grant the parties' request for a decision on the briefs
without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case
is therefore ordered submitted without oral argument.

       This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

unreasonable. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we reject these challenges and **affirm** the judgment of the district court.

**I**

The events giving rise to the prosecution in this case transpired during the late hours of February 1, 2013, and the early hours of February 2, 2013. That night, Alicia Klein began receiving text messages from Mr. Sadler—her former boyfriend—who wanted her to "hang out with him" and threatened to "come there and beat . . . up" her social companions when she declined. R., Vol. 4, at 76 (Trial Tr., dated Dec. 9, 2013). Later in the evening, Mr. Sadler sent more text messages asking Ms. Klein to pick him up from his boss's home because he was too inebriated to drive. Ms. Klein agreed.

When Ms. Klein arrived at the pre-arranged location, she found Mr. Sadler getting into a physical altercation with his father, Craig Sadler ("Craig"). Once the men stopped fighting, Ms. Klein, following Craig, drove Mr. Sadler to Craig's residence. Mr. Sadler "wanted to fight and argue" with Ms. Klein during the car ride; she asked him to be quiet. *Id.* at 79.

After reaching Craig's home, Ms. Klein went inside to assist Craig with his blood-pressure medication and then agreed to stay and talk to Mr. Sadler. She and Mr. Sadler went into Mr. Sadler's bedroom, but she decided to leave once it became obvious that Mr. Sadler "wanted to talk about [her] being with one of

2

[her] ex-boyfriends, [which] always led to a fight." *Id.* at 80. Her attempted departure prompted Mr. Sadler to throw her "across the bed into the wall." *Id.* Ms. Klein then endeavored to get up, collect her car keys and phone from the kitchen, and leave. At that point, Mr. Sadler ran to the kitchen and opened a door. He threw Ms. Klein's keys and phone out of the door and "threw [Ms. Klein] outside down the stairs," ripping her shirt in the process. *Id.*

Finding herself locked outside the residence, shoeless and shirtless in extremely cold weather, Ms. Klein pounded on the door and begged to be let inside. Eventually either Mr. Sadler or Craig unlocked the door, and she went back into the home and saw Mr. Sadler standing near a handgun that was on a television stand. She had not noticed a gun in the house before Mr. Sadler threw her outside—or, for that matter, during any prior visit to that residence.

Shortly after Ms. Klein re-entered the home, Mr. Sadler picked up the gun and said, "[T]his is a hostage situation and nobody is going anywhere." *Id.* at 82. He then repeatedly tapped the gun against the back of Ms. Klein's head and her temple. Ms. Klein tried to defend herself by hitting Mr. Sadler in the face three times, which only served to make him angrier. Concerned that "somebody [had] called the cops," Mr. Sadler began "pacing back and forth" with the gun. *Id.* at 83. Eventually, Ms. Klein coaxed Mr. Sadler to lie down in his bedroom with her—although he held onto the gun—and they both fell asleep.

3

When Ms. Klein awoke the next morning, the gun was "lean[ing] up against the window sill" of Mr. Sadler's bedroom. *Id.* at 85. Craig took possession of the gun, and Ms. Klein retrieved her phone. Because Ms. Klein could not find her car keys, she waited "about [forty-five] minutes to an hour" for a friend to come and pick her up. *Id.* at 87. She told her friend that "something really bad [had] happened" when she requested a ride home. *Id.* Within approximately one hour, she received a text message from Mr. Sadler that said, "Last night was regrettable. I hate it all. I probably should have shot myself." *Id.* at 88.

A federal grand jury of the United States District Court for the District of Wyoming returned a one-count indictment against Mr. Sadler on May 23, 2013, charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Although he originally agreed to plead guilty to the charges, Mr. Sadler exercised his right to a jury trial that took place on December 9 and 10, 2013. The jury found him guilty as charged.

Using the 2012 version of the Guidelines, the United States Probation Office prepared a presentence investigation report ("PSR"). The PSR observed that Mr. Sadler had a prior felony conviction and determined the appropriate base offense level with reference to U.S.S.G. § 2K2.1 (the guideline for felon-in-possession offenses). Because it concluded that Mr. Sadler possessed the prohibited gun in connection with the commission of another felony offense—specifically, "[k]idnapping which resulted in the victim being sexually

4

assaulted[1] while the defendant possessed a firearm," R., Vol. 2, ¶ 53, at 46

(Revised Presentence Investigation Report, filed Dec. 11, 2013)—the PSR cross-

referenced U.S.S.G. § 2X1.1 in its computations. *See* U.S.S.G. § 2K2.1(c)(1)(A).

That guideline (i.e., § 2X1.1) directed the use of "[t]he base offense level from

the guideline for the substantive offense, plus any adjustments from such

guideline for any intended offense conduct that can be established with reasonable

certainty." *Id.* § 2X1.1(a). Further reference to the guideline for the substantive

offense of kidnapping[2] yielded a base offense level of thirty-two. *See id.*

§ 2A4.1(a) (kidnapping guideline).

The PSR then recommended a two-level sentencing increase, pursuant to

U.S.S.G. § 2A4.1(b)(3), based upon its finding that Mr. Sadler possessed a

"dangerous weapon" that he used to confine Ms. Klein unlawfully in Craig's

residence when she attempted to leave. PSR, ¶ 13, at 37. It also prescribed a six-

level increase, as set forth in U.S.S.G. § 2A4.1(b)(5), because it found that Mr.

Sadler sexually exploited Ms. Klein "while [he] was preventing her from leaving

the residence." PSR, ¶ 14, at 37. Referencing Mr. Sadler's adjusted offense level

of 40 and his criminal history category of IV, the PSR computed an advisory

---

[1]     Although the district court prohibited all of the witnesses at Mr. Sadler's trial from discussing allegations of sexual assault, the court permitted testimony of this nature during the sentencing hearing.

[2]     The PSR also indicated that Mr. Sadler had been charged in state court with "several counts relating to th[e] federal [i]ndictment," PSR, ¶ 29, at 41, and that one of those charges was kidnapping in violation of Wyoming law.

Guidelines range of 360 months to life imprisonment. However, it ultimately recommended a term of imprisonment of 120 months (i.e., ten years)—the statutorily authorized maximum sentence for Mr. Sadler's offense of conviction.[3] *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

In a filed response to the PSR, Mr. Sadler disputed the cross-reference to the kidnapping guideline to establish his base offense level and objected to the imposition of the two above-noted sentencing enhancements. He renewed these objections at sentencing. Notably, he insisted that "the facts d[id] not fit the cross-referenc[e]" to kidnapping, R., Vol. 4, at 332 (Tr. Sent'g Hr'g, dated Jan. 6, 2014)—an offense which requires some degree of involuntary detention of another individual under the relevant federal and Wyoming statutes.[4] Mr. Sadler

---

[3]    *See* 18 U.S.C. § 924(a)(2) (providing that individuals convicted of violating 18 U.S.C. § 922(g) "shall be . . . imprisoned not more than 10 years").

[4]    The federal kidnapping statute prohibits "unlawfully seiz[ing or] confin[ing]" another "and hold[ing that person] for . . . reward." 18 U.S.C. § 1201(a). "Our cases have interpreted this statute to require, *inter alia*, that the victim be (1) held against his or her will (2) for some benefit to the captor." *United States v. Gabaldon*, 389 F.3d 1090, 1094 (10th Cir. 2004); *see United States v. Toledo*, 985 F.2d 1462, 1467 (10th Cir. 1993) ("[T]he involuntariness of the seizure and detention . . . is the very essence of the crime of kidnapping." (omission in original) (emphasis omitted) (quoting *Chatwin v. United States*, 326 U.S. 455, 464 (1946))). Similarly, Wyoming defines kidnapping, in relevant part, as the "unlawful[] confine[ment of] another person, with the intent to . . . [f]acilitate the commission of a felony; or . . . [i]nflict bodily injury on or

(continued...)

6

claimed that the kidnapping cross-reference lacked an adequate factual basis because Ms. Klein eventually left Craig's home voluntarily and did so without reporting the incident to law enforcement. Additionally, he argued that it would be "disturbing and unfair" for the court to impose a sentence "based on mostly hearsay-type evidence" concerning kidnapping. R., Vol. 4, at 333.

The evidence to which Mr. Sadler apparently objected on hearsay grounds was sentencing-hearing testimony given by Corporal Paul Pownall, an investigator with the Campbell County, Wyoming, Sheriff's Office. Corporal Pownall, who had testified at Mr. Sadler's trial, appeared at the sentencing to

---

[4](...continued)
to terrorize the victim or another." Wyo. Stat. Ann. § 6-2-201(a). Such "confinement is unlawful if it is accomplished . . . [b]y force." *Id.* § 6-2-201(b)(i).

Both statutes patently implicate the conduct the government sought to prove concerning Mr. Sadler—*viz.*, that, in the course of illegally possessing a firearm, he unlawfully held Ms. Klein against her will for the purpose, at least in part, of committing a sexual assault on her (i.e, the illicit benefit). The Guidelines make clear that the cross-reference applies when "the defendant used or possessed any firearm . . . in connection with the commission . . . of *another offense*," U.S.S.G. § 2K2.1(c)(1) (emphasis added)—without regard to the statutory source of that other offense. For our purposes, therefore, the relevant considerations are: (1) that Mr. Sadler was adjudicated guilty of being a felon in possession, and (2) that he was sentenced according to a guideline generally implicating kidnapping as the underlying substantive offense. We do not purport to decide whether Mr. Sadler could actually have been convicted of kidnapping beyond a reasonable doubt under federal or Wyoming law because "§ 2X1.1, when cross-referenced by § 2K2.1(c), does not require a conviction before a district court may use the guideline provision applicable to the conduct underlying the firearm offense." *United States v. O'Flanagan*, 339 F.3d 1229, 1234 (10th Cir. 2003).

7

discuss the fruits of his February 25, 2013, interview with Ms. Klein. He stated that Ms. Klein had conveyed that "Justin Sadler tried to have sex with her," and that she had indicated that her response was: "Justin, no. I don't want to have sex with you. You disgust me." R., Vol. 4, at 317. According to Corporal Pownall, Ms. Klein then told him the specifics of Mr. Sadler's rejoinder—"You wouldn't say no to somebody who had a gun"—and admitted that she did have sex with Mr. Sadler that night because she "felt coerced into" doing so. *Id.* at 317–18.

Mr. Sadler personally made an unsworn statement at the sentencing hearing wherein, *inter alia*, he denied committing the alleged sexual assault and suggested that he had been denied the opportunity to confront his accusers "to refute the[ ] kidnapping charges." *Id.* at 348. However, the district court ultimately rejected Mr. Sadler's various objections, accepted the PSR's findings, and imposed the statutorily authorized maximum sentence of 120 months. Mr. Sadler has timely appealed.

## II

Turning to Mr. Sadler's challenges to the sentence he received, "[w]e review sentences for reasonableness under a deferential abuse of discretion standard." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008); *see United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008) (noting that "[s]ince the Supreme Court's decision in [*United States v. Booker*, 543 U.S. 220 (2005)], which relegated the Sentencing Guidelines to an advisory status, district courts

have been free to apply any sentence that is 'reasonable' under the sentencing factors listed at 18 U.S.C. § 3553(a)").  Our assessment of reasonableness "includes both procedural reasonableness, which encompasses the manner in which a sentence was calculated, and substantive reasonableness, which concerns the length of the sentence." *United States v. Caiba-Antele*, 705 F.3d 1162, 1165 (10th Cir. 2012); *accord United States v. Scott*, 529 F.3d 1290, 1299–1300 (10th Cir. 2008).

On appeal, Mr. Sadler disputes the procedural and substantive reasonableness of his 120-month sentence.  We address his arguments in turn.

**A**

"A sentence is procedurally unreasonable if the district court incorrectly calculates or fails to calculate the Guidelines sentence, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, relies on clearly erroneous facts, or inadequately explains the sentence." *Haley*, 529 F.3d at 1311; *accord United States v. Zapata*, 546 F.3d 1179, 1192 (10th Cir. 2008).  In our assessment of procedural reasonableness, we ask whether the district court "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *United States v. Lente*, 759 F.3d 1149, 1156 (10th Cir. 2014) (alterations in original) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).  Ultimately, because a procedural error "amounts to an abuse of discretion . . . , 'we review a

9

district court's legal interpretation of the Guidelines de novo and its factual findings for clear error.'" *United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008) (citation omitted) (quoting *United States v. Smith*, 534 F.3d 1211, 1226 (10th Cir. 2008)).

Mr. Sadler contends that the district court committed procedural error when it cross-referenced from U.S.S.G. § 2K2.1, the felon-in-possession guideline, to U.S.S.G. § 2A4.1, the kidnapping guideline. He advances three strands of reasoning to support his view that his sentence is procedurally unreasonable—namely, he argues that (1) facts supporting a cross-reference must be proven beyond a reasonable doubt; (2) various decisions of the Supreme Court demonstrate that the district court erred when it cross-referenced to the kidnapping guideline; and (3) the district court committed procedural error by violating his Sixth Amendment Confrontation Clause rights during the sentencing hearing. For the reasons that follow, we conclude that binding precedent easily forecloses each of Mr. Sadler's theories and underscores the procedural reasonableness of his sentence.

**1**

In his first challenge to the procedural reasonableness of his sentence, Mr. Sadler avers generally that the cross-referencing mechanism "should not [have] be[en] used" unless facts supporting utilization of the kidnapping guideline were "proved beyond a reasonable doubt." Aplt. Opening Br. at 17. However, Mr.

10

Sadler's argument is predicated on a fundamental misunderstanding of the law of criminal sentencing. Accordingly, we decline to accept it.

**a**

Section 2K2.1 of the Guidelines, which governs unlawful possession of a firearm, directs a sentencing court as follows: "If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, . . . apply . . . § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above." U.S.S.G. § 2K2.1(c)(1)(A). Application note 14 to § 2K2.1 defines "another offense," for purposes of subsection (c)(1), as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* § 2K2.1 cmt. n.14(C). With the foregoing in mind, turning to § 2X1.1, a court must utilize "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." *Id.* § 2X1.1(a).

This cross-referencing mechanism "permit[s] the sentencing court's consideration of other offense conduct even though [the] defendant was only convicted of being a felon in possession of a firearm . . . ." *United States v. O'Flanagan*, 339 F.3d 1229, 1232 (10th Cir. 2003); *see United States v. Willis*,

11

925 F.2d 359, 361 (10th Cir. 1991) ("[T]he cross reference to § 2X1.1 requires that when a defendant uses an illegal firearm to commit other offense conduct that he be sentenced according to such other offense conduct even though his conviction is only for the unlawful possession of firearms."). It preserves the sentencing court's considerable discretion; "'a perfect match is not required' between the defendant's conduct and the . . . guideline selected as the most analogous" in terms of the substantive offense. *United States v. Cherry*, 572 F.3d 829, 831 (10th Cir. 2009) (quoting *United States v. Fortier*, 180 F.3d 1217, 1229 (10th Cir. 1999)).

Critically, as a matter of well-settled law, "§ 2X1.1, when cross-referenced by § 2K2.1(c), *does not require a conviction* before a district court may use the guideline provision applicable to the conduct underlying the firearm offense." *O'Flanagan*, 339 F.3d at 1234 (emphasis added); *see Willis*, 925 F.2d at 360; *accord United States v. Earls*, 704 F.3d 466, 474 (7th Cir. 2012); *United States v. Drew*, 200 F.3d 871, 877–79 (D.C. Cir. 2000); *United States v. Branch*, 91 F.3d 699, 742–43 (5th Cir. 1996); *United States v. Fleming*, 8 F.3d 1264, 1266–67 (8th Cir. 1993). Our interpretation and application of this guideline "is confirmed by an analysis of the express intent of the Sentencing Commission, the uniformity of persuasive authorities, the purpose of the Sentencing Guidelines, and the context in which § 2X1.1 is used." *O'Flanagan*, 339 F.3d at 1234–35. In that regard, the Guidelines instruct that a defendant's base offense level "*shall* be determined on

the basis of . . . *all acts* and omissions committed."  U.S.S.G. § 1B1.3(a)(1)(A)

(emphases added); *see United States v. Dewberry*, 790 F.3d 1022, 1034 (10th Cir.

2015) ("The Guidelines authorize a sentencing court to consider 'relevant

conduct' in determining a defendant's base offense level.").  Commentary by the

Sentencing Commission[5] also indicates that:

> The principles and limits of sentencing accountability under this guideline [i.e., the relevant-conduct guideline] are not always the same as the principles and limits of criminal liability. . . . [T]he focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, *rather than on whether the defendant is criminally liable* for an offense as a principal, accomplice, or conspirator.

U.S.S.G. § 1B1.3 cmt. n.1 (emphasis added).

Indeed, it has been clear for some time that even "a jury's verdict of

*acquittal* does not prevent the sentencing court from considering conduct

underlying the acquitted charge . . . ."  *United States v. Watts*, 519 U.S. 148, 157

(1997) (per curiam) (emphasis added); *accord United States v. Lujan*, 603 F.3d

850, 856 (10th Cir. 2010).  "This result follows from the difference between the

standard of proof at trial and the standard of proof at sentencing."  *United States*

*v. Mendez-Zamora*, 296 F.3d 1013, 1019 (10th Cir. 2002) (citing *Watts*, 519 U.S.

---

[5]    "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  *Stinson v. United States*, 508 U.S. 36, 38 (1993); *accord United States v. Evans*, 782 F.3d 1115, 1117 (10th Cir.), *cert. denied*, --- U.S. ----, 136 S. Ct. 171 (2015).

at 155).  Specifically, the evidentiary standard applicable to a jury's verdict is proof beyond a reasonable doubt, whereas the standard applicable to a sentencing court's determination of the facts is proof by a preponderance of the evidence. *See United States v. Todd*, 515 F.3d 1128, 1137 (10th Cir. 2008); *see also United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005) ("Both before and under the Guidelines, facts relevant to sentencing have generally been found by a preponderance of the evidence.").

**b**

Having detailed the framework within which the district court was obligated to sentence Mr. Sadler, we discern no procedural error.  The court applied the cross-reference provision of U.S.S.G. § 2X1.1 to find that the proper base offense level was supplied by U.S.S.G. § 2A4.1—the kidnapping guideline—which yielded a base offense level of thirty-two, as the PSR noted.  In doing so, the court made specific findings of fact that pertained to the offense of kidnapping:

> [T]he evidence in support of this cross-reference came in at trial with the testimony of Alicia Klein testifying to what the defendant said to her and how he acted at the time.  She testified that the defendant said that "This is a *hostage* situation."  [Her] demeanor at trial reinforced the point that she felt *terrorized* by the events that occurred.  And the fact that she came back in the house after she was initially pushed out is of little consequence because it was at that time that she was back in the house that the gun appeared, as argued by the Government, and so . . . the significant time in considering this cross-reference is when the defendant was in possession of the firearm and what he said and

14

did at that point in time . . . . Certainly the events before show that this situation had escalated and then when Ms. Klein came back into the residence it's the Court's conclusion that it escalated yet again with the *confinement of Ms. Klein* and the *threats* applied by the defendant.

R., Vol. 4, at 337–38 (emphases added). The court then found that "the pistol was . . . tapped against [Ms. Klein's] head" and "was not only carried into the bedroom, but . . . was placed within reach and referred to by the defendant." *Id.* at 338.

Moreover, the court acknowledged and accepted Corporal Pownall's testimony "that [Ms. Klein's] initial response to the suggestion of having sex [with Mr. Sadler] was rejection." *Id.* The court deemed it "clear" from the "course of testimony at trial that Ms. Klein was worried and scared throughout the course of the events," *id.*, concluding that the PSR was correct in its finding that Mr. Sadler unlawfully confined Ms. Klein in Craig's residence, *see id.* at 338–39 (accepting cross-referencing and sentencing enhancements of PSR); *see also* PSR, ¶ 14, at 37 ("[W]hile the defendant was preventing [Ms. Klein] from leaving the residence, he was also pushing her to have sex. She advised she ultimately gave in and had sex with the defendant, but only because he had the gun and she was scared.").

All of these findings made on the record at sentencing easily demonstrate that the district court properly found by a preponderance of the evidence that Mr. Sadler unlawfully confined and sexually assaulted Ms. Klein. Thus, the court was

15

correct to utilize the cross-referencing mechanism, which "merely allow[ed] the sentence for the charged crime—in this case illegal gun possession—to reflect the reality of the crime." *Willis*, 925 F.2d at 361. Contrary to Mr. Sadler's view, the court was not required to accept his rendition of the evidence at sentencing to determine the true nature of the offense—or, for that matter, to entertain his unsupported averment that "contradictions and holes . . . can be drawn" from the sentencing-hearing testimony. Aplt. Opening Br. at 28. We have said that "the district court's determination of a witness's credibility at a sentencing hearing is 'virtually unreviewable on appeal,'" *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1134 (10th Cir. 2003) (quoting *United States v. Jones*, 160 F.3d 473, 480 (8th Cir. 1998)), and we have no reason to disturb the court's determinations here.

In sum, we conclude that the district court applied the cross-referencing provision in a manner fully permissible by our circuit precedent. We reject Mr. Sadler's overaching argument that the court procedurally erred by employing the cross-referencing mechanism without finding the substantive-offense facts (i.e., those supporting utilization of the kidnapping guideline) beyond a reasonable doubt.

**2**

Next, Mr. Sadler insists that the district court flouted the Supreme Court's instructions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Alleyne v. United States*, --- U.S. ----, 133 S. Ct. 2151 (2013), and *Descamps v. United States*, ---

16

U.S. ----, 133 S. Ct. 2276 (2013). He believes that, by virtue of these decisions, the Supreme Court has admonished sentencing courts not to cross-reference under the Guidelines as the district court did here. We disagree.

Specifically, Mr. Sadler opines that *Apprendi*, *Alleyne*, and *Descamps* illuminate that the district court's mode of calculation "crossed the line" of judicial discretion, Aplt. Opening Br. at 19, because that calculus produced a sentence "based on judicially-determined facts," *id.* at 16. He contends in that vein that "[t]raditional notions of due process," as set forth in these decisions of the Court, require "every element of an [offense] [to] be proved beyond [a] reasonable doubt, not [by a] preponderance of the evidence." *Id.* at 17.

More to the point, Mr. Sadler suggests that these authorities forbade the district court from finding by a preponderance of the evidence that his underlying conduct on the night in question constituted kidnapping. He argues that this is so because, under *Apprendi* and its progeny, any fact that increases a defendant's maximum sentence is considered an element of the charged offense that must be proven to a jury—and, in his view, "the cross-referencing guideline enhances a statutory maximum sentence of felon in possession," Aplt. Opening Br. at 18, in violation of these cases. However, Mr. Sadler is mistaken.

*Apprendi* is wholly inapposite to his circumstances because we have "applied *Apprendi* only where a sentencing court ha[s] imposed a sentence above the statutory maximum permitted by the statute of conviction, regardless of what

17

fact finding the court, rather than the jury, conducted to impose a sentence within that statutory maximum." *United States v. Price*, 400 F.3d 844, 847 (10th Cir. 2005). Stated otherwise, "*Apprendi* does not apply to sentencing factors that . . . do not increase the statutory maximum." *United States v. Fredette*, 315 F.3d 1235, 1245 (10th Cir. 2003). Here, it is pellucid that the district court's cross-referencing did *not* increase Mr. Sadler's statutory-maximum sentence. Mr. Sadler was sentenced to serve 120 months in prison—the maximum sentence allowed by statute—which is patently at least 240 months below what he would have received under the advisory Guidelines range but for that statutory limit. The district court's cross-referencing did not have the effect of elevating in any way the applicable statutory maximum. Therefore, Mr. Sadler's circumstances fall outside the realm of scenarios contemplated by *Apprendi*.

Second, by their own terms, the remaining cases upon which Mr. Sadler relies undermine his argument that a jury was required to find facts supporting the offense of kidnapping beyond a reasonable doubt. Notably, the Supreme Court spoke directly to this point in *Alleyne* as follows:

> In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment. *See, e.g.*, *Dillon v. United States*, 560 U.S. [817, 828–29] (2010) ("[W]ithin established limits[,] . . . the exercise of [sentencing] discretion does not contravene the Sixth

18

Amendment even if it is informed by judge-found facts" (emphasis deleted and internal quotation marks omitted)); *Apprendi*, 530 U.S. at 481 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute").

*Alleyne*, 133 S. Ct. at 2163 (second through fifth alterations in original).

We have discerned "no error in [sentencing] procedure under *Alleyne*" when "nothing in the record indicates the district court increased [the] [d]efendant's statutory sentencing range or otherwise altered his legally prescribed punishment." *United States v. Cassius*, 777 F. 3d 1093, 1097 (10th Cir.), *cert. denied*, --- U.S. ----, 135 S. Ct. 2909 (2015); *see United States v. Zar*, 790 F.3d 1036, 1054–55 (10th Cir.) ("The defendants' reliance on *Apprendi* and *Alleyne* is misplaced as none of the defendants were . . . sentenced beyond the statutory maximums for their convictions."), *cert. denied*, --- U.S. ----, 136 S. Ct. 562 (2015). That is certainly true here.

Finally, we understand Mr. Sadler to invoke *Descamps* for the proposition that the Supreme Court has proscribed "sentencing courts [from] making findings of fact that properly belong to juries." Aplt. Opening Br. at 19 (quoting *Descamps*, 133 S. Ct. at 2287). Yet, the language of *Descamps* upon which Mr. Sadler relies must be placed in proper context; when this happens, it is apparent that he is misguided. In the relevant passage in *Descamps*, the Court was discussing the categorical approach to statutory interpretation (i.e., a legal

19

principle that is patently outside the scope of this appeal) and explaining why that approach was legally sound. The Court stated that this was so because "[the] elements-centric, 'formal categorical approach' . . . avoids the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries"—which, as relevant there, were findings of fact regarding prior convictions. *Descamps*, 133 S. Ct. at 2287 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). This language does not speak to the district court's sentencing calculus in Mr. Sadler's case, and it certainly does not announce a rule that sentencing courts cannot make findings of fact.

Ultimately, we find it beyond peradventure that these three Supreme Court decisions do *not* stand for the proposition that a district court may not make findings of fact by a preponderance of the evidence when sentencing a defendant *within* the statutory range. And Mr. Sadler offers no legally cogent reason for concluding otherwise. Therefore, we reject his contention that Supreme Court precedent demonstrates that his sentence is procedurally unreasonable.

**3**

Mr. Sadler also claims that his sentence is procedurally unreasonable because the district court "relie[d] on clearly erroneous facts," Aplt. Opening Br. at 13 (quoting *Haley*, 529 F.3d at 1311), when it allowed Corporal Pownall to testify regarding Ms. Klein's account of the crime at the sentencing hearing. Although Mr. Sadler does not identify with specificity the purportedly

20

objectionable testimony, he avers that the court's consideration of Corporal Pownall's testimonial hearsay statements (i.e., statements concerning what Ms. Klein told the officer) trenched upon his Sixth Amendment "right to confront [a] complaining witness." *Id.* at 30. He wisely acknowledges that he did not present this argument to the district court and that our review is consequently limited to an assay for plain error. *See United States v. Olano*, 507 U.S. 725, 731 (1993); *United States v. Rosales-Miranda*, 755 F.3d 1253, 1257–58 (10th Cir. 2014).

In order to "successfully run the gauntlet created by our rigorous plain-error standard of review," *United States v. McGehee*, 672 F.3d 860, 866 (10th Cir. 2012), Mr. Sadler must demonstrate: "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if [4] it seriously affects the fairness, integrity, or public reputation of judicial proceedings," *United States v. Cooper*, 654 F.3d 1104, 1117 (10th Cir. 2011) (quoting *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007)). This standard is "difficult to overcome," *United States v. Frost*, 684 F.3d 963, 971 (10th Cir. 2012), and Mr. Sadler's challenge does not even survive the first step because he cannot establish that the district court erred at all.

According to Mr. Sadler, the district court's consideration of sentencing-hearing testimony from Corporal Pownall regarding Ms. Klein's allegations of sexual assault violated the Sixth Amendment's Confrontation Clause as construed

21

in *Crawford v. Washington*, 541 U.S. 36 (2004).  The rule set forth in *Crawford* is that testimonial hearsay is inadmissible at trial unless the declarant is unavailable and the defendant had an earlier opportunity to cross-examine the declarant.  *See* 541 U.S. at 68; *accord Ohio v. Clark*, --- U.S. ----, 135 S. Ct. 2173, 2179 (2015); *United States v. Summers*, 414 F.3d 1287, 1298–99 (10th Cir. 2005).  Stated otherwise, we have said that "[t]he upshot [of *Crawford*] is that the [Confrontation] [C]lause 'constitute[s] an absolute bar to the admissibility of a testimonial hearsay statement where the declarant was unavailable to testify at trial and the defendant had no prior opportunity to cross-examine the declarant.'" *United States v. [Richard] Clark*, 717 F.3d 790, 815 n.15 (10th Cir. 2013) (fifth alteration in original) (quoting *United States v. Smalls*, 605 F.3d 765, 774 (10th Cir. 2010)).

Importantly, *Crawford* enunciated a *trial* right, *not* a sentencing right.  *See United States v. Battles*, 745 F.3d 436, 462 (10th Cir.), *cert. denied*, --- U.S. ----, 135 S. Ct. 355 (2014).  As we have interpreted the Supreme Court's *Crawford* decision, it "concerned the use of testimonial hearsay statements at trial and does not speak to whether it is appropriate for a court to rely on hearsay statements at a sentencing hearing." *United States v. Bustamante*, 454 F.3d 1200, 1202 (10th Cir. 2006); *accord Battles*, 745 F.3d at 462.  As such, we have been able to remain

faithful to "our [pre-*Crawford*] precedent[6] 'that constitutional provisions regarding the Confrontation Clause are not required to be applied during sentencing proceedings.'" *Bustamante*, 454 F.3d at 1202 (quoting *United States v. Hershberger*, 962 F.2d 1548, 1554 (10th Cir. 1992)). The opinions of our sister circuits that have considered confrontation rights during sentencing proceedings also support the conclusion that we reach here—*viz.*, that Mr. Sadler's *Crawford* argument is unavailing. *See, e.g.*, *United States v. Isom*, 635 F.3d 904, 907–08 (7th Cir. 2011); *United States v. Dyer*, 589 F.3d 520, 532 (1st Cir. 2009); *United States v. Ingham*, 486 F.3d 1068, 1076 (9th Cir. 2007); *United States v. Brown*, 430 F.3d 942, 944 (8th Cir. 2005); *United States v. Martinez*, 413 F.3d 239, 243 (2d Cir. 2005).

Further, in a post-*Crawford* case bearing many similarities to Mr. Sadler's—most saliently, involving a cross-reference to kidnapping for a convicted felon in possession—a panel of this court discerned no procedural error when the district court considered hearsay statements from the alleged victim during sentencing. *See United States v. McGuffin*, 149 F. App'x 714, 718–19

---

[6] *See, e.g.*, *United States v. Beaulieu*, 893 F.2d 1177, 1180 (10th Cir. 1990) ("The Supreme Court has made clear that the constitutional requirements mandated in a criminal trial as to confrontation and cross-examination do not apply at non-capital sentencing proceedings." (footnote omitted)); *United States v. Sunrhodes*, 831 F.2d 1537, 1543 (10th Cir. 1987) ("[T]he requirements mandated in a criminal trial as to confrontation and cross-examination are not applicable at sentencing proceedings. The right to confrontation is basically a trial right.")

(10th Cir. 2005).  The panel noted that "the Guidelines allow a sentencing court to consider all relevant information 'without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'"  *Id.* at 719 (quoting U.S.S.G. § 6A1.3(a)).  It ultimately discerned no violation of the defendant's Confrontation Clause rights as construed by *Crawford*.  Applying *McGuffin*'s logic, we reach the same conclusion regarding Mr. Sadler's challenge.[7]

In sum, we cannot say that the sentencing court committed any error at all, let alone error that would have been clear or obvious under current law.  We therefore hold that this Confrontation Clause challenge fails under our plain-error

---

[7]  Mr. Sadler does not appear to challenge the admission of hearsay evidence per se at his sentencing proceeding.  Even if his briefing could conceivably be read to include such a challenge, we would easily hold that it is meritless.  Hearsay evidence bearing even minimal indicia of reliability is perfectly proper during sentencing proceedings.  *See United States v. Damato*, 672 F.3d 832, 847 (10th Cir. 2012) (noting that "we have consistently" permitted the consideration of hearsay at sentencing "if [the statements] bear some *minimal* indicia of reliability" (emphasis added) (quoting *Cook*, 550 F.3d at 1296)); *see also United States v. Ruby*, 706 F.3d 1221, 1227 (10th Cir. 2013) ("Unlike at a criminal trial where the Federal Rules of Evidence limit the types of admissible evidence, at a sentencing hearing the court can have access to any relevant information, as long as it adheres to a preponderance of the evidence standard. Sentencing courts historically rely on a wide array of information relevant to the individualized needs of the offender, including hearsay evidence . . . ." (citation omitted)).  And it is palpable from our review of the record that the hearsay evidence admitted here bore adequate indicia of reliability.

standard. And, having duly rejected all of Mr. Sadler's averments of procedural error, we conclude that his sentence *is* procedurally reasonable.[8]

**B**

Mr. Sadler also charges that the sentence he received was greater than necessary to serve the purposes of sentencing.[9] "A sentence is substantively unreasonable if the length of the sentence is unreasonable given the totality of the

---

[8] Although Mr. Sadler nominally disputes the court's two upward adjustments from the base offense level under the Guidelines—i.e., for use of a dangerous weapon and sexual exploitation of the victim—we note that the challenge to these increases is identical to the one he lodges regarding the base offense level cross-referencing. For the reasons we have already provided, we conclude that the district court did not commit clear error in accepting these two sentencing enhancements, and we reject Mr. Sadler's invitation to reverse on that basis.

[9] Mr. Sadler's opening brief borders on inadequate because his only statements concerning substantive reasonableness are (1) that "[a] sentence is substantively unreasonable if the length 'is unreasonable given the totality of the circumstances in light of [the] 18 U.S.C. § 3553(a) factors,'" Aplt. Opening Br. at 13 (quoting *Haley*, 529 F.3d at 1311), and (2) cursory mentions in his table of contents and summary of the issues. In other words, he presents his appellate arguments without citations to the record for supporting facts or reasons for his contentions. *See* Fed. R. App. P. 28(a)(8); *see Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) ("Under Rule 28, . . . a brief 'must contain[ ] more than a generalized assertion of error . . . .'" (quoting *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001))); *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002) ("We do not consider merely including an issue within a list to be adequate briefing."). We *may* deem such appellate issues waived if they are insufficiently briefed. *See Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998). Nonetheless, in the exercise of our discretion, we have reviewed the merits of Mr. Sadler's substantive-reasonableness challenge. *See Garrett*, 425 F.3d at 840 (indicating that the court of appeals may still address issues raised in inadequate briefing).

circumstances in light of the 18 U.S.C. § 3553(a) factors."[10]  *Haley*, 529 F.3d at

1311.  We review the sentence imposed under a deferential abuse-of-discretion

standard.  *See Rita*, 551 U.S. at 350–51; *United States v. Shuck*, 713 F.3d 563,

570 (10th Cir. 2013).  Consequently, "we will 'deem a sentence [substantively]

unreasonable only if it is arbitrary, capricious, whimsical, or manifestly

unreasonable.'"  *Lente*, 759 F.3d at 1158 (quoting *United States v. Gantt*, 679

F.3d 1240, 1249 (10th Cir. 2012)).

In our analysis, however, we presume a sentence to be substantively

reasonable if it falls within the properly calculated advisory Guidelines range.

*See United States v. Sanchez-Leon*, 764 F.3d 1248, 1267 (10th Cir. 2014); *United*

*States v. Chavez*, 723 F.3d 1226, 1233 (10th Cir. 2013).  We have "extend[ed] the

rebuttable presumption of reasonableness to a below-guideline sentence

challenged by the defendant as unreasonably harsh."  *United States v. Balbin-*

---

[10]    More specifically, these factors include:

> the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; pertinent guidelines; pertinent policy statements; the need to avoid unwanted sentence disparities; and the need to provide restitution.

*United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 n.3 (10th Cir. 2005)
(citing 18 U.S.C. § 3553(a)).

*Mesa*, 643 F.3d 783, 788 (10th Cir. 2011); *accord United States v. Trent*, 767 F.3d 1046, 1051 (10th Cir. 2014); *see also United States v. Zaavedra*, 590 F. App'x 828, 829 (10th Cir. 2015) (noting that "[a] statutory maximum sentence that is below the Guidelines range is functionally equivalent to a within-Guidelines sentence and is entitled to a presumption of reasonableness." (citing *United States v. Johnson*, 445 F.3d 793, 798 (5th Cir. 2006))).

"[T]he presumption of reasonableness 'is a deferential standard that either the defendant or the government may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in [18 U.S.C.] 3553(a).'" *United States v. Tindall*, 519 F.3d 1057, 1066 (10th Cir. 2008) (quoting *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006)). As germane here, we have concluded that the district court committed no procedural error in calculating Mr. Sadler's advisory Guidelines range, and his ultimate sentence is well below that advisory range due to the ceiling established by the statutory maximum for his offense. *See* U.S.S.G. § 5G1.1(a). Accordingly, Mr. Sadler's sentence is entitled to a presumption of reasonableness. Mr. Sadler thus bears the burden of convincing us otherwise; that is, he must explain why his sentence is "unreasonable when viewed in light of the § 3553(a) factors, i.e., sentencing's substantive component." *United States v. Grigsby*, 749 F.3d 908, 910 (10th Cir.), *cert. denied*, --- U.S. ----, 135 S. Ct. 214 (2014). This he has not done. Mr. Sadler's failure to discuss the ostensible unreasonableness of his

27

sentence in light of the § 3553(a) factors sounds the death knell for his substantive-reasonableness challenge.[11]  Accordingly, we have no occasion to disturb the district court's imposition of a sentence of 120 months.

### III

For the reasons discussed above, we **AFFIRM** the judgment of the district court.


Entered for the Court


JEROME A. HOLMES
Circuit Judge

---

[11]     In any event, our thorough review of the record leaves us with no reason to question the substantive reasonableness of the court's sentence. Notably, the court properly weighed the sentencing factors, particularly insofar as those factors bear on "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed . . . to reflect the seriousness of the offense" and to deter future criminal conduct and "protect the public," *id.* § 3553(a)(2).